ANNA P. MAXWELL, RESPONDENT, v. KANSAS CITY, MISSOURI, APPELLANT.—52 S. W. (2d) 487.

Kansas City Court of Appeals. July 5, 1932.

*Allan R. Browne* and *Grover & Browne* for respondent.

*George Kingsley, James M. Larkin* and *John J. Cosgrove* for appellant.

. TRIMBLE, P. J.—Plaintiff's action is to recover damages for injuries alleged to have been sustained by reason of her fall on a defective sidewalk whereby she says both bones of her right ankle were broken in several places, she suffered much pain, lost a great deal of sleep, has been compelled to-expend $100 for a doctor and will be compelled to pay a like further sum, for all of which she asks $7500.

The answer was a general denial, coupled with a plea that "plaintiff's conduct contributed to any injuries plaintiff may have received in this; that plaintiff negligently failed to use plaintiff's eyes and senses in selecting the course which plaintiff was pursuing, and negligently failed to use plaintiff's eyes and senses in the use of such course."

Plaintiff filed a reply which was a general denial.

The defendant city demurred to the evidence, both at the close of plaintiff's and at the end of the entire case; but each demurrer was overruled.

The jury returned a three-fourths verdict for plaintiff in the sum of $1000, and defendant has appealed.

Defendant contends (1) that plaintiff failed to make a case for the jury, (2) that the court erred in overruling the demurrer, (3) that plaintiff's instruction No. 1 is erroneous, and (4) that the trial court abused its discretion in permitting the introduction of plaintiff's rebuttal testimony which defendant also says is incompetent.

The petition alleges that about 11:30 A. M., February 13, 1929, at a point about in front of 704 Spruce street, she was caused to fall on the sidewalk by the negligence of defendant in that—

"It negligently failed to keep and maintain said sidewalk at the point where plaintiff fell in a reasonable condition of repair in this: that it was bulged up and the surface broken, cracked and irregular and jagged, forming a sudden irregularity and small crater

and elevated place into which plaintiff stepped and on which bulged and elevated place she tripped.''

The petition further alleged that these facts existed on and long prior to said February 13, 1929, and rendered the walk not reasonably safe for pedestrians, as defendant knew or by due care could have known, by due care, in time to have remedied the same long prior to the fall.

Plaintiff's evidence was that she, a married woman, the mother of one child and thirty-five years old, was going south on the west side of Spruce street between Seventh and Eighth streets on her way to attend a Sunday school class-meeting. She is five feet, three and one-half inches tall, and weighs 175 pounds.

She was asked ''as you got in front of 704 Spruce street, what happened?'' (All italics the author's.)

''A.  Well, I tripped on the raised place in the sidewalk. The tree, of course, it had grown under the other slab of the walk, elevating it quite a ways and beginning in the middle of the walk, a little bit smaller elevation and there was some ice caked in there.

. . . . . .

''Q.  And what was it you tripped on there, with what foot? A.  I tripped with the right foot on the elevation of that slab, just caught my heel, just the edge of my heel, throwing me back slightly, *slipping*.

. . . . . .

''Q.  Your right heel? A.  Yes, my heel caught and throwing me back and it was caught back under me.

''Q.  Mrs. Maxwell, what place on the sidewalk was it you fell with reference to towards the curb or towards the house side? A.  At the curb side it was; near the curb side.

''Q.  Was that up-hill, level, or down-hill? A.  No, I was going, you might say, down-hill. Spruce is down-hill most of the way, especially from Independence Avenue to Eighth street.

''Q.  From Seventh to Eighth? A.  From Seventh to Eighth is quite a hill.

''Q.  To the south? A.  Yes, and I was going down-hill.

. . . . . .

''Q.  Did you see this place before you stepped on it? A.  No, sir.

''Q.  How were you looking as you went along there? A.  I was looking southward. I was walking along in an ordinary way.

''Q.  Looking where you were going? A.  Yes.

''Q.  Mrs. Maxwell, as your right foot caught you say your right heel caught there on that place where it was tipped up, bulged up, what did you do? What did your other foot do? A.  Well, in trying to catch myself or get my balance it slipped and went up and then of course I sat right down.

"Q. What did your left foot slip on? A. *Well, I judged this ice there, that small cake of ice there.*

. . . . . .

"Q. At any rate, your left foot went where then? A. Well, it just went up.

"Q. You mean went out? A. Went out, yes.

"Q. In front of you? A. Yes, in front of me and I was caught.

"Q. How did you go down? What was your position? A. Well, *I fell back. I fell north.* I fell *right straight back.* My foot caught, my heel caught here (indicating) and I was laying back.

"Q. Your heel caught where? A. Right in there (indicating).

"Q. Where with reference to the pavement and the bulged place? A. You mean how near it?

"Q. Yes. A. Well, right on the—

"Q. (Interrupting) Right on the place that was bulged? A. Yes, right on the edge of the bulge there.

"Q. Then, your right foot was where when you came down? A. It was under me, just doubled back, is the way it was. It threw me with a jerk.

"Q. Did you fall full length? Did you go down full length? A. Yes.

"Q. Lying *clear back on your back?* A. Yes."

On cross-examination, she testified:

"Q. (By Mr. Cosgrove) Now, Mrs. Maxwell, the slab itself was perfectly smooth and level on the surface, wasn't it? A. What do you mean?

"Q. The walking surface. There were no holes there? A. No.

"Q. Or crumbled places? A. No, no holes.

"Q. Or crumbled places on top of the slab? A. No, *just that elevation.*

. . . . . .

"Q. Was there any obstruction or anything around this projection that would have prevented you from seeing it? A. Yes; there was ice that was just a little bit of it down in that place until it was enough to obstruct the view of that.

"Q. You mean to say there was ice down in that crack? A. Yes, the walk was clean all except right at that joint in the walk there at that elevation where it was lower and had caked in there.

. . . . . .

"Q. You say you had lived there at that place five years and had used that sidewalk during that entire five years? A. Yes, sir.

"Q. About how frequently did you walk over that sidewalk, as much as once a week? A. No, I don't think I did.

"Q. As much as once a month? A. Well no, I shouldn't judge I walked over that walk once a month.

"Q. What is your best recollection now as to how often you walked over this place where this condition existed? A. Well, about once every three months.

"Q. About once every three months; and had you seen this place before this time? A. No, sir.

"Q. Never had seen it? A. No, sir.

"Q. Do you know how long it had been there? A. No, sir.

"Q. You had never noticed that before? A. No, sir.

"Q. In the five years that you had been going over it about once every three months you had never seen this difference in elevation in the sidewalk. A. No, sir.

. . . . .

"Q. What was the first thing you noticed unusual when you walked along there? A. You mean—

"Q. What was the first thing that appeared unusual? A. Well, it was when my heel caught on that.

"Q. The heel on your right foot. A. Yes, sir.

"Q. That was the first thing that you noticed? A. Yes.

"Q. Then did you look down and examine the place? A. No, I didn't have time then.

"Q. Then, after you say your heel caught against it, what next happened? A. Well, I was screaming by that time.

"Q. Something else happened then, didn't it? You didn't just stand there with your heel against that obstruction? A. Well, it threw me. *It threw me back.*

"Q. What threw you back? A. Catching my heel, I was walking in an ordinary way and was ready to step with this foot (indicating) and when this other was caught, naturally *I was thrown back.*

"Q. Did you step with the other foot? A. I started and as it caught me—

"Q. (Interrupting) Did you step the other foot on the ground? A. Yes, I stepped the other foot this way (indicating).

"Q. The other foot as I understand you a while ago slipped out from under you? A. No.

"Q. What did happen? A. I said as I caught my heel and went to step with this (indicating), this heel was caught with a jar and I just slipped and went forward.

"Q. I understand you to say in your direct examination something about your heel slipping on some ice. A. No, you didn't understand me to say my left heel. I was stepping with this foot (indicating).

"Q. Your left foot? A. Yes, and it just (indicating) like this.

"Q. Was that because of some ice there on the sidewalk? A. I told you there was ice in that crack in the walk.

"Q. I didn't ask you what was there. I asked you whether that was the cause of the other foot slipping? A. In getting my balance, I can't say what caused it to slip."

Although it is claimed in the brief that plaintiff was carrying a container or bowl of something, we are unable to find anything in the record to show that she was carrying a container. She testified she was wearing galoshes and shoes with ordinary heels two inches high. The only witness near plaintiff when she fell could not be found or obtained at the trial and there is no other testimony as to the cause or manner of her fall.

Did the court err in overruling the demurrer offered at the close of the plaintiff's case and renewed at the close of the whole case? The basis of defendant's claim on this point is that the rise or offset in the surface of the sidewalk is so slight as not to constitute negligence in the continued maintenance thereof, as a matter of law.

The alleged defective place in the sidewalk in no way corresponds to the description given in the petition. Photographs were offered in evidence which, it is admitted, fairly show the condition of the sidewalk at the time of the plaintiff's fall, and are conceded to be the same as on the day of plaintiff's fall, and these merely show that one of the sections of the concrete sidewalk was slightly elevated, at the northeast corner, above the level of the next adjoining section, said rise being greatest at the east or outside edge of the sidewalk and extending regularly along the line dividing the two sections until it was about half way across the sidewalk, diminishing as it went, until the surfaces of the sections gradually came to a common level. This difference in elevation at the northeast corner of said section of concrete was caused apparently, and as plaintiff and perhaps other witnesses testified, by the roots of a tree growing at the east side and near to the northeast corner of said concrete section of walk, slightly elevating that corner of the adjacent section above the surface of the adjoining southeast corner of the slab immediately north of it. There is no other defect or inequality of the surface of said walk. Plaintiff herself says the surface of the slabs or sections of the concrete were perfectly smooth; there were no holes in the walking surface, no crumpled places "just that elevation." Plaintiff also says there was ice, "just a little bit of it down in that place until it was enough to obstruct the view of that," (the elevation). "Q. You mean to say there was ice down in that crack? A. Yes, the walk was clean all except right at that joint in the walk there at that elevation, where it was lower and had caked in there. "Q. On account of that you think you couldn't see? A. No."

There is nowhere in the evidence any showing whatever that the "surface of the walk was broken, cracked and *irregular and jagged*

forming a sudden irregularity *and small crater"* as described in the petition.

Plaintiff's evidence is that she was walking along the east side of the middle portion of the sidewalk and the point where she tripped, slipped, or fell, was about nine inches from the east edge of the walk; that the elevation at the east edge of the slab was half an inch or an inch higher than at the point where she fell. These distances, however, she said were mere estimates or guesses, that is, her best judgment. Other evidence in plaintiff's favor *estimated* that the elevation, at its highest point (the east or outside edge of the sidewalk), was two or three inches, and somewhat less at the point where plaintiff said she fell. Like her statements, these were mere estimates or guesses and were not based upon actual measurements. Defendant introduced evidence of actual measurements saying that the rise at the point where plaintiff said she fell was only one-half inch, the plaintiff's husband then went to the place and made measurements and came into court, *testifying for plaintiff,* that the rise was *one and one-half inches* at the east edge of the sidewalk and, *one and one-fourth inches* at the point where plaintiff fell. The *actual* measurements taken and offered in evidence by plaintiff should prevail over the *speculative estimates.* [Mann v. Phoenix Brick Const. Co., 151 Mo. 586.] The case cited by plaintiff as contrary to this, Ganey v. Kansas City, 259 Mo. 654, is where the *estimated* evidence was on one side and the *measured* evidence was on the other. Here they both were on the same side, the plaintiff's, and as she offered both, a *guessed* estimate and a *measured,* the latter should be accepted as it is clear the witnesses were giving their guesses or estimates and did not pretend to know exactly what the height was and plaintiff vouched for both. The citation of Stotler v. Chicago, etc., R. Co., 200 Mo. 107, 123, is still less in point since the court says such evidence is admissible when "no better evidence can be obtained." Here the plaintiff furnished better evidence. That the lesser, or measured height, is more nearly correct is clearly shown by the photographs, conceded to be correct, one of which shows the edge of the south section of concrete raised above the adjoining section with a small penny matchbox gentlemen carry to light their smokes, lying against the edge of the upraised slab. The upraised edge thus compared with the thickness of the matchbox as revealed by the admittedly correct photograph, shows that the uplifted edge can be little more than three-quarters of an inch at its highest point, the northeast corner of the slab section, and diminishes to nothing as it goes west to perhaps very little past the middle of the walk. So that the husband's measurement of one and one-fourth inches at the point where the plaintiff fell is at least liberal and is to be taken as the correct measurement in determining whether the defect is a negligent and actionable one.

In Lindell v. Kansas City, 201 S. W. 564, Judge ELLISON, late of this court, says he is inclined to the view that whether a defect in a sidewalk is of a character of negligence "which will create liability to the suffering pedestrian who is himself without fault is a question of fact for the judgment of a jury. . . . We are inclined to this from the difficulty a court would have in saying, as a matter of law, that an unnecessary obstruction such as described was not a negligent obstruction. It is *not practical*, of course, *to maintain a walk exactly level*, or *wholly free from obstruction, especially where the topography, or the immediate surroundings are such as to make it impractical*. The obstruction may be *so great* or *so slight* as that it may be declared *to be* or *not to be*, negligence as a matter of law. That in the present case is *along the border line*, and we think it should be left to a jury." (Italics ours.)

The difference in the elevation of the blocks in that case was "between *two and three inches*." In the case at bar, the measured difference was *one and one-fourth inches*, and "the topography and immediate surroundings" mentioned by Judge ELLISON (the sloping ground and the adjacent shade trees in the case at bar) certainly made it difficult to preserve an exact and perfectly smooth surface.

In Bryant v. Village of Potsdam, 235 N. Y. Supp. 599, the difference in elevations was two inches, and yet the court held the defect was too trivial to be negligent or actionable. In that case too, the defect was actively and negligently *created* by the city itself in removing and replacing the section or slab of concrete, while in the case at bar it was the result of nature's slow and silent action operating amidst the surroundings. Whatever may be the rule in New York, as shown by the above cited and other decisions, we think they do not strictly exemplify the rule in Missouri, which would at least have left an offset of two inches to the judgment of a jury.

In Harlin v. Gray, City Treasurer, 133 Atl. 811, dealing with a hole or depression one and seven-eighths inches in depth, it was held such would be insufficient to create liability. In that case, however, the plaintiff's evidence showed that she fell by reason of stepping on a lump of ice and not by stepping into the hole or depression as her petition alleged. In that case too the court held, which is the law in Missouri as well, that a city "is not bound to maintain a sidewalk upon an absolutely even plane and without slight variations in its surface."

It will serve no purpose to examine other foreign cases whose jurisdictions require a sterner rule than does Missouri. So that an examination of Missouri cases will likely prove more profitable in an investigation of the question before us.

In Price v. Maryville, 174 Mo. App. 698, the offset, hole or depression, was some six or eight inches at one end and two inches in the middle which was one regarded as negligent and therefore actionable.

In Hanke v. City of St. Louis, 272 S. W. 933, the offset was two or three inches in extent. In Huffman v. City of Hannibal, 287 S. W. 848, the walk had a gutter across it, a mere depression in the concrete about two and one-half inches deep and four inches wide; also the expansion seam running lengthwise, crossing the gutter at right angles, and on either side of the gutter at or about the expansion seam, a depression was created by the breaking and chipping of the concrete; and the concrete along the expansion seam had bursted and buckled so that the edge of the western half of the sidewalk was about an inch above the surface of the eastern half, and a diamond-shaped hole twelve inches long and six wide, so that in the gutter was a hole one and one-half inches *deeper than the gutter* and to this was added the one-inch elevation of the west half of the walk. Such a defect was clearly to be, and was, left to the jury. Of course, this is a much more extensive and dangerous defect than the one in the case at bar.

In Wells v. St. Joseph, 184 Mo. App. 428, a block of granitoid sidewalk directly against or *under the doorway* of an abutting shop had sunk *three inches* below the one next to it, and the question of negligence was likewise left to the jury.

In Clancy v. City of Joplin, 181 S. W. 120, the defect in the sidewalk was a hole one foot in diameter and *four inches* in depth, and there was no question as to whether it was defective, the court telling the jury that the hole was a dangerous and defective place.

In Ryall v. Maplewood, 201 S. W. 633, the defect was a slightly slanting stepping stone in a street crossing, but the danger did not arise merely from that fact but also because the crossing was a very crude one and because *conditions,* allowed to prevail at that particular place, were such "as to *enhance the danger* ordinarily attendant upon using stepping stones of this general character."

In Kelley v. Kansas City, 153 Mo. 484, there was a hole in the crossing which was lower than the sidewalk and a plank step was between the sidewalk and the hole, and plaintiff as she stepped from this plank step to the crossing stepped into the hole. Naturally, the defect was unquestionably negligent and dangerous, far more extensive than the one in the case at bar.

In Proctor v. City of Poplar Bluff, 184 S. W. 123, the defect consisted of loose bricks on edge in sand, maintained at a point where pedestrians stepped down from a raised place in the sidewalk, and plaintiff was injured in that way. No question arose as to the negligence in maintaining such condition.

In Cooper v. City of Caruthersville, 264 S. W. 46, the defect was glass strewn on a much traveled sidewalk at one of the most public places in the city and allowed to remain there until plaintiff stepped on a piece, slipped and fell and was injured. The question of whether the defect was dangerous seems not to have been controverted, though the question whether the city had either actual or constructive notice was.

Alexander v. City of St. Joseph, 170 Mo. App. 376, was a case where the defect was a stump six inches in diameter, and extending *three or four inches* above the surface of the sidewalk, and plaintiff, who was apprehensively watching a frightened team about to run away and in her direction, fell over the stump. The question of the city's negligence in permitting the stump to remain there for five months was held to be for the jury.

In O'Donnell v. City of Hannibal, 144 Mo. App. 155, the obstruction over which plaintiff tripped and fell was a loosened cellar door-hinge that protruded above the surface of the walk some *two or three inches*. The city's negligence was a question for the jury.

In Stewart v. Sheidley, 16 S. W. (2d) 607, the defect consisted of a crack across one of the divisional slabs causing a triangular piece of the slab to stick up a half inch higher than the main slab, and this difference was *accentuated* and *increased to several inches* by reason of the depression in the stone slabs at that point and this hazard was *added to* by the steep grade of the street in question.

The foregoing review of the Missouri cases involving actionable defects in sidewalks shows that where an offset or rise in the walk was alone relied upon, they were higher and more pronounced than the one in the case at bar, and in many other instances there was an accompanying depression which greatly increased the difference in the surface and the consequent danger. We have not found a case where the elevation extended so slightly above the surface and for so short a distance and was the *only defect* relied upon, as the so-called defect in the case now before us. According to plaintiff's evidence the condition of the walk had never been noticeable to her prior to the moment she stepped on the small piece of ice at the place where she slipped and fell, and this notwithstanding the fact that for five years she had lived where she did and passed over the walk at the place in question about once every three months. If the place was not reasonably safe it would seem that, if plaintiff was in the exercise of reasonable care, the defect would not have escaped her attention. The duty of the city was to exercise ordinary care to see that the walk was reasonably safe, and likewise it was incumbent upon plaintiff to use reasonable care for her own safety. If the offset in the surface of the street, of two or three inches, in the Lindell case is *"on the border line"* between a defect to be left to a jury to say whether it is actionable, and one to be declared non-

actionable as a matter of law, then it would seem that one inch less than that, as in the case at bar, is on this, or the nonliable, side of that line. Under all the circumstances, we are unwilling to extend the liability of municipalities to a slighter defect than any heretofore declared, so far as we have been able to find in the adjudicated cases.

Especially is this true when it is manifest from plaintiff's evidence that the offset did not cause her to fall as her pleadings allege. She testifies that she was walking south and going downhill and approaching the elevation or offset, that is, as she came to the place, the elevation was on the northward portion of the south slab to which she was approaching. If the heel of her right shoe caught on this elevation and she tripped, then inevitably she would have fallen forward downhill in the direction she was going. Her momentum would have caused her to fall so. But she repeatedly, clearly and explicitly, says she did not fall that way. She says, "I tripped with the right foot on the elevation of that slab, just caught my heel, just the edge of my heel, *throwing me back* slightly *slipping.*" Further on she says, "Well, in trying to catch myself or get my balance, it (the left foot) slipped and went up and then, of course, *I sat right down.*

"Q. What did you left foot slip on? A. Well, I judge this ice there, that small cake of ice there.

. . . . . .

"Q. At any rate, your left foot went where, then? A. Well it just went up.

"Q. You mean went out? A. Went out, yes.

"Q. In front of you? A. Yes, in front of me and I was caught.

"Q. How did you go down? What was your position? A. Well, *I fell back, I fell north.* I fell *right straight back.* My foot caught here (indicating) and I was *laying back.*

"Q. Did you fall full length? Did you go down full length? A. Yes.

"Q. Lying *clear back on your back?* A. *Yes.*

. . . . . .

"Q. What was the first thing that appeared unusual? A. Well it was when my heel caught in that.

"Q. The heel on your right foot? A. Yes, sir.

"Q. That was the first thing you noticed? A. Yes.

"Q. Then did you look down and examine the place? A. No, I didn't have time then.

"Q. Then, after you say your heel was caught against it, what next happened? A. Well, I was screaming by that time.

"Q. Something else happened then, didn't it? You didn't just stand there with your heel against that obstruction? A. Well, it threw me. It *threw me back.*

"Q. What threw you back? A. Catching my heel. I was walking in an ordinary way and was ready to step with this foot (indicating) and when this other was caught, naturally I *was thrown back.*"

Clearly, catching her right heel against the upraised concrete section did not cause her left foot to go out and up in front of her, and she fell back north, clear back on her back. Manifestly, her fall in that manner was not caused by catching her heel on the projection above the surface of the walk, however, honest she may be in the belief that she did. The fall she described must have been caused by *slipping* (as she says she did) on the small piece of ice there. But nothing was said in the pleadings about any ice nor is there any evidence showing it to be such a matter as to be actionable negligence in allowing it to be there.

The testimony of plaintiff herself is all of the testimony as to the manner of her fall. She says that her heel caught and she tripped and fell *backward, slipping.* She also testified there was a small piece of ice there, and she judged she slipped on that, though afterwards she testified she did not know what it was that caused her to slip. She says positively that her feet went *forward,* in front of her and that she fell at full length on her *back.* It must be remembered that she was walking downhill, going along in the usual way, and looking ahead. She was a woman weighing 175 pounds. Had her right heel caught in the rise as she says, her momentum and the down grade would have inevitably thrown her *forward,* with her feet to the north and her head to the south, the direction she was going. Instead of that, her testimony is that her feet went south, the right one bent back under her, and she was full length on the flat of her back. There can be no other conclusion reached from her undisputed evidence than that she was not caused to fall to the sidewalk by the catching of her heel in the rise of the sidewalk, in which event she would inevitably have fallen forward, but that she fell by reason of her right foot or left foot or both, slipping from beneath her, causing her to fall on her back, with a jar, as she says. Where the plaintiff's evidence is so contrary to physical facts, viz., contrary to natural law, as to reveal that it could not have happened as she relates, the courts will refuse to credit it.

In the case of Daniels v. Kansas City, etc., Ry. Co., 177 Mo. App. 280, plaintiff was standing on a street car step, without support, when the car suddenly started forward with a jerk, as plaintiff claimed. He said that he was thrown to the street on both knees, with his head and body in the direction the car was headed and practically parallel with the track. ELLISON, P. J., held such testimony unworthy of belief. He cites Scroggins v. Metropolitan St. Ry. Co., 138 Mo. App. 215, in which the principles involved are

discussed. There can be no escape from the conclusion that, had plaintiff's fall been caused by the rise in the sidewalk catching her heel, she would have fallen forward, and when she says she slipped and fell backward, her fall was the result of some other cause than that pleaded. The judgment should be reversed. It is so ordered. *Bland, J.,* concurs; *Arnold, J.,* absent.