254 S.W.2d 38 (1953)
GENOVA
v.
KANSAS CITY.
No. 21774.
Kansas City Court of Appeals, Missouri.
January 12, 1953.
*39 David M. Proctor, John J. Cosgrove and T. James Conway, Kansas City, for appellant.
Rufus Burrus and James L. Gillham, Independence, for respondent.
DEW, Judge.
This action was brought by the plaintiff (respondent) to recover damages for alleged injuries received in a fall while walking on a sidewalk in the down town district of Kansas City. Plaintiff recovered a verdict and judgment for $1000 and defendant has appealed.
The petition charged that on December 5, 1947, while plaintiff, in the exercise of due care for his own safety, was walking in front of 106 West 9th Street, a public street and thoroughfare in Kansas City which runs east and west, and at which point the defendant had caused to be constructed a sidewalk for pedestrian travel, and because of the broken, uneven and dangerous condition thereof plaintiff was caused to fall and to sustain the injuries described. The petition further charges that the defendant negligently failed to keep the sidewalk in a reasonably safe condition, considering the extent and use for persons walking thereon and permitted it to be and become in a broken, uneven and not in a reasonably safe condition for such use. The answer was in the nature of a general denial and a plea of contributory negligence.
Plaintiff's evidence was to the effect that on December 5, 1947, he had quit his work for the day and at about dusk that evening he and a friend on his right were walking east on the north side of West 9th Street, somewhat down grade, and when reaching a point in front of 106 West 9th Street "something happened" to his leg, causing him to fall against his friend and to the sidewalk. The friend supported himself by a light pole near the curb. Plaintiff testified: "The first thing I knew I twisted my foot and fell to the sidewalk". Seeing that he was in pain, the friend helped the plaintiff to his feet. Plaintiff remarked that he believed he had sprained his ankle and stood there about five minutes, awaiting the pain to lessen. They then examined the place where plaintiff had fallen and, with the help of his friend, plaintiff proceeded to a nearby barber shop, where each got a haircut. Plaintiff noticed a large lump had formed on his ankle and being still in pain, he called a taxi and went home. Later, at the hospital, doctors examined his foot with x-ray, and found plaintiff had suffered a fracture of the fifth metatarsal bone in the right foot. A cast was applied *40 to his foot and lower leg and it was necessary that plaintiff use crutches. He wore the case for three and a half weeks and used the crutches about a month or so thereafter.
Plaintiff's evidence further tended to show that, except for a little ice near the curb, the sidewalk in question at the place of the accident, was dry and clean; that there was a cracked place or break in the sidewalk where plaintiff was walking when his foot turned. Photographs were identified by the plaintiff and his friend, mentioned above, which showed an abrupt break in the concrete sidewalk at about the place that they said the plaintiff started to fall, which crack appeared irregular, jagged, and ran southeasterly and northwesterly, across the width of the concrete slab, running toward and close to the light pole referred to near the curb. The portion or end of the slab south of the break and on the street side, appeared to have settled and was around two inches lower than the part north of the break. At one point the jagged edge of the break appeared to jut out materially toward the street. Plaintiff's witness, who was walking with him at the time, said that when plaintiff fell he was walking "where this point comes out", referring to the photographs. Tar or other material had been placed in and along the crack and against and only partially covering the raised portion of the broken edge, and the edges of the crack had been worn smooth. The plaintiff, referring to the crack, testified: "I guess that is what started my foot to turn," and "The side toward the building was about two, around two inches higher than the side toward the street, which threw me out towards the street". He further stated: "It seemed to me, oh, kind of patched up, an old crack what I mean to say, it wasn't a recent defect in the sidewalk as I could see right then and there".
Defendant's evidence was that no more than minor defects existed in the sidewalk at the time and place of the accident. No question is here raised as to the injuries, the amount of the verdict, the admissibility of the evidence, or as to any instructions of the court.
Defendant's first three points, combined, are that the court erred in overruling defendant's motion for a directed verdict at the close of all the evidence because (1) no actionable defect in the sidewalk was shown, leaving the cause of the fall to guess and conjecture; (2) no actionable defect in the sidewalk was shown sufficient to cause plaintiff's foot to turn, the cause of which may have been one for which the city would not be liable, and (3) no actionable defect was shown to have existed for a sufficient time to charge the defendant with notice thereof so that, with the exercise of reasonable care, it could have corrected the same.
We are aware of the rule that where an injury may have resulted from one of two causes, for only one of which the defendant would be liable, the plaintiff must, with reasonable certainty, show that the cause for which defendant would be liable was one of the proximate causes of his injury. Wills v. Berberich's Delivery Co., 345 Mo. 616, 134 S.W.2d 125. But it is not necessary that plaintiff's evidence "exclude the possibility of accident or of a cause for which defendant is not liable, but it is sufficient to make a submissible case if there is substantial evidence that the injury resulted from a cause for which defendant is liable". Cech v. Mallinckrodt Chemical Co., 323 Mo. 601, 20 S.W.2d 509, 515. See, also, Sparks v. Auslander, 353 Mo. 177, 185, 182 S.W.2d 167; Obert v. City of St. Louis, Mo.App., 148 S.W.2d 126. This may be shown by facts and circumstances which "fairly suggest that the defendant's negligence operated proximately to produce plaintiff's injury and which afforded a reasonable inference to that effect, reckoned with in light of ordinary experience and such conclusion as common sense dictates". Irby v. St. Louis Public Service Co., Mo.App., 82 S.W.2d 118, 122.
A municipality has fulfilled its duty in respect to the maintenance of its streets and sidewalks in a safe condition when it has exercised reasonable and ordinary care to keep them reasonably safe for public travel by those who use them in the exercise of ordinary care for their own safety. It is not required to keep its *41 streets and sidewalks in such perfect condition as to preclude the possibility of any accidents thereon under all circumstances, nor is it liable for every defect, however trivial or slight. But if it cannot be said in a given case, as a matter of law, that the defect complained of as negligence of the city was so slight or trivial that it could not reasonably have been anticipated that such defect would likely cause injury to pedestrians thereon in the exercise of ordinary care on their own part, then the issue of negligence is a matter for the jury to determine. Taylor v. Kansas City, 342 Mo. 109, 116, 112 S.W.2d 562.
The case at bar must be distinguished from cases where concrete slabs of sidewalk had well marked lines or seams of jointure and one slab has, for one reason or another, been raised or lowered somewhat from an adjacent slab. Lundahl v. Kansas City, Mo.App., 209 S.W. 564; Maxwell v. Kansas City, 227 Mo.App. 234, 52 S.W.2d 487. The break or crack in evidence here ran with the course of a pedestrian normally traveling thereon and extended at an angle clear across the width of the slab. The upper edge of the break was about two inches above the lower, and the tar caulking reached only part way to the upper edge, thus leaving along the course of a pedestrian not only an abrupt depression, but also a sloping connection therefrom to the lower surface of the slab. Whether by reason of such conditions, so located, the sidewalk at that place, as shown by the evidence, was not reasonably safe for use of pedestrians in the exercise of ordinary care for their own safety was a matter to be determined by the jury.
We believe that a reference to the evidence adduced by the plaintiff as above stated also discloses that there was substantial proof, considered most favorably to the plaintiff as we must on the challenges made here, to submit to the jury on the factual issues whether, while plaintiff was in the exercise of ordinary care for his own safety, the defect caused the plaintiff's foot to turn, resulting in his fall and the fracture of his ankle, and that the condition in the sidewalk had existed sufficiently long to charge the defendant with knowledge in time, in the exercise of reasonable care, to have corrected it. Those issues, under all the evidence, were properly submitted to the jury for determination.
Defendant asserts that the court erred in refusing to disqualify two certain members of the venire for cause. Defendant struck them from the panel and claims it was wrongfully deprived of its rights. It claims their acquaintance with the scene of accident disqualified them. Marshall E. Fletcher, venireman, testified he had passed over the place of the accident for about three years, beginning about October following the time of the accident, but said he was not acquainted with the place prior to October, 1948. He testified that such circumstances would in no way affect his verdict in this case. Charles M. Miller, venireman, stated that he passed over the sidewalk in question nearly every day for the past six years. He said he would have no difficulty in rendering a verdict under the evidence and under the directions of the court. Other general questions were asked of these veniremen as to any cause whatever that would interfere with their impartial verdict, to which no affirmative answers were given. "Trial courts have a wide discretion in supervising the selection of jurors, and the exercise of this discretion will not be interfered with unless clearly abused". Rose v. Sheedy, 345 Mo. 610, 612, 134 S.W.2d 18, 19. "The competency of (a juror is) a question of fact and the finding of the circuit court will not be disturbed unless clearly against the evidence". Ruschenberg v. Southern Electric Railroad Co., 161 Mo. 70, 87, 61 S.W. 626, 630. See, also, Hieber v. Thompson, Mo.App., 252 S.W.2d 116. In the instant case we are not able to say, as a matter of law, that the court abused its discretion in overruling the defendant's request to disqualify the two veniremen for cause.
Finding no error in the record materially affecting the merits of the case, the judgment is affirmed.
All concur.