Estelle McELHATTAN, Plaintiff-Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Defendant-Appellant.

No. 45988.

Supreme Court of Missouri, Division No. 1.

Jan. 17, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Feb. 10, 1958.

Harry L. Bell, St. Louis, for appellant, Lloyd E. Boas, St. Louis, of counsel.

Lyng, MacLeod & Davidson, Russell N. MacLeod, St. Louis, for respondent.

VAN OSDOL, Commissioner.

This is an action for personal injuries sustained by plaintiff when her eastbound automobile and defendant's northbound streetcar collided in the intersection of Page Avenue and defendant's Hodiamont right of way in St. Louis. Plaintiff's case was submitted to the jury on negligence of defendant in moving its streetcar northwardly on its north-south Hodiamont right of way into Page Avenue, an east-west street, in violation of an ordinance providing for the observance of signals displayed by officially installed traffic control devices. A jury returned a verdict for plaintiff in the amount of $15,000. Defendant has appealed.

Herein are involved questions of the admissibility of a witness' prior extra-judicial statements consistent with the testimony of the witness when such statements are proffered in corroboration or support of such testimony. No contention is made that plaintiff failed to make out a submissible case, or that the trial court erred in the trial of the cause, other than defendant-appellant's contention that the trial court erred in refusing to allow defendant to "rehabilitate" its witness, one Robert Dale Burgess.

As we have stated, negligence of defendant was submitted in moving its streetcar northwardly into Page Avenue in violation of traffic control signals. There were traffic control lights (green [go], amber [caution], and red [stop]) displayed by automatic devices installed at the north-

east and southwest corners of the intersection. It was, of course, plaintiff's supporting factual theory that defendant's streetcar was moved northwardly into Page and into collision with plaintiff's automobile when red lights were against the northbound movement of defendant's streetcar and when green lights signaled clearance for east-west traffic on Page. And it was defendant's theory that plaintiff moved her automobile into the Hodiamont right of way and into collision with defendant's streetcar when the traffic signal devices displayed red lights against east-west traffic on Page and when green lights signaled clearance for north-south movement of streetcars on defendant's Hodiamont right of way.

Robert Dale Burgess, witness for defendant, testified that he, a passenger, got off the east side of defendant's streetcar when the streetcar had stopped at (south of) Page Avenue. He started walking northwardly across Page. "I went out (northwardly into the street), and *the light was green,* and I looked up the street to see if there was any cars coming, and one car was coming, I would say, approximately two hundred and twenty-five to two hundred and fifty feet away, and it was coming east. * * * Q. At the time you entered the intersection of Page Avenue, or entered Page Avenue, after walking out from the south to the north, what was the condition of the signal light for northbound traffic on the Hodiamont right of way? A. *Green.*"

On cross-examination the witness was questioned by plaintiff's counsel as follows:

"Q. Now, Mr. Burgess, do you recall a young man (Edward L. Filippine) from our office coming and talking to you early this summer (May 5, 1956) and asking you about the accident? A. Very well.

"Q. He asked you certain questions about the accident and took down the substance of what you told him? A. That's right. I do not know what he took down.

"Q. Did you sign the note that he made from his conversation with you? A. I signed—he wanted me to read it and I glanced at it and signed it to get rid of him. * * *

"Q. I'll hand you and ask you if that's your signature, that portion at the bottom of the page? A. That is what appears to be my signature.

"Q. Now, in several places on this paper, sir, where certain words have been scratched out, and others substituted and initialed, there's two of them there, five on the back of the page, and two on the front—four on the front, are those your initials, sir? A. Yes, sir.

"Q. Did you initial those places? A. Yes, sir, at his request. * * * As you well know, you, or somebody else, called my wife, and my wife notified you that I had the scout troop out on Prairie Drive that day * * * and that gentleman barged in, and I couldn't get rid of him to save my neck, after even telling him that fact. * * *

"Q. *Do you remember telling this young man there were no electric signals on the corner at the intersection, and the only signaling device was a flickering light hanging up over the street? A. I don't remember making that statement.* I believe something was said about one, about when these things were put in or something. If I remember right, at that time, I was trying to talk to him, and talk to my wife, trying to get things over to her, and get back with the troop. I couldn't place the time they were installed, and I asked her, and she said she didn't know." And the witness later said, "To tell you the truth, I was messed up there. I couldn't recollect anything that was said one way or the other. I can't recollect anything said at that time, very little of it."

The statement of May 5, 1956, was subsequently marked "Plaintiff's Exhibit No. 16."

On redirect examination, defendant's counsel offered to prove that March 2, 1954,

five days after the collision, the witness Burgess had made a statement to a representative of defendant as follows, " 'I got off at the front door. When I got off *I noticed the light was green* for the Hodiamont streetcar to cross Page. *I noticed the light was green* so I started to walk north across Page on the east side of the streetcar. I started across before the streetcar. I do recall the light of the automobile coming east on Page, but I did not pay too much attention to it because *the light was red for Page traffic.*' " Defendant's counsel announced he was offering the prior statement of March 2d "to rebut the statement offered by the plaintiff, which is later in time than this statement." Plaintiff's counsel reminded the trial court that no statement had been offered by the plaintiff. The trial judge said, "I think that's correct. Had it been offered, particularly, as an exhibit, but I don't think it has been, as far as the evidence goes. It has been mentioned by counsel and the witness, and naturally, that would be in the record, although it is not an exhibit at this point, that's true." The trial court specifically excluded "the offer of that statement given to one of your (defendant's) investigators, and supported by your witness."

In rebuttal, plaintiff produced Edward L. Filippine, who testified that he was an employee at the office of plaintiff's counsel. He stated he had obtained the statement (Plaintiff's Exhibit No. 16) on May 5, 1956, from the witness Burgess at the Burgess home. Changes or corrections were made on the face of the statement and were initialed by Burgess who read the corrected statement and signed his name to it. Plaintiff's counsel then offered Plaintiff's Exhibit No. 16.

■ It is said to be the general rule that when a witness has merely testified on direct examination, without any impeachment, proof of consistent statements is valueless. State v. Emma, 324 Mo. 1216, 26 S.W.2d 781. The witness is not helped by it; and, although his story be improb-

able or untrustworthy, it is not made more probable or trustworthy by any number of repetitions of it. Such evidence would ordinarily be both irrelevant and cumbersome to the trial, and hearsay; and courts generally reject it. Vol. IV, Wigmore on Evidence, 3d Ed., § 1124, pp. 194–195; Ann. Cas.1915D, 338. In State v. Fleming, 354 Mo. 31, 188 S.W.2d 12, 16, this court made note of the contrariety of rulings in different jurisdictions on the question of whether, as an exception to the rule of exclusion, a prior statement of a witness consistent with his present testimony may be introduced in support or in corroboration of the testimony of the witness, in cases where there has been an attempt to impeach a witness by proof of statements inconsistent with his testimony at the trial. Reference was made to the Annotation, 140 A.L.R. 21, and it was also noted that some confusion exists in the decisions in Missouri on this question. See the Annotation, supra, at pages 49–71 and 129; Vol. IV, Wigmore on Evidence, 3d Ed., § 1126, pp. 197–202.

In the Fleming case, in stating an element of proof the absence of which is fatal to the application of the exception to the rule of exclusion (where there has been contended impeachment on the ground of inconsistent statements), this court said that *"absent the introduction of evidence to establish statements contradicting the testimony given by the witness,* impeachment resulting from mere cross-examination is insufficient to render admissible prior extrajudicial consistent statements * * *."* (Our italics.) A positive statement of the exception as recognized in Missouri is observed in State v. Maggard, 250 Mo. 335, 157 S.W. 354, 359, as follows, *"Where a witness is impeached by proof of variant acts or statements,* relevant evidence of the witness' prior statements correspondent with his testimony, are admissible for the purpose of rehabilitation." (Our italics.) In the Maggard case, the witness was assailed by many "variant" statements and by almost all other attacks known to the law, save one—impeachment by evidence tend-

ing to show the witness' general reputation for truth and veracity. And see State v. Emma, supra, wherein the witness admitted his former inconsistent testimony given at a preliminary hearing; Piehler v. Kansas City Public Service Co., 360 Mo. 12, 226 S.W.2d 681, wherein the witness admitted making (inconsistent) answers in a deposition; State v. Emrich, Mo.Sup., 250 S.W. 2d 718, wherein the impeaching documents executed by the witness McQuinn were offered and received as a part of the cross-examination; State v. Crocker, Mo.Sup., 275 S.W.2d 293, wherein defendant's witness, Richeson, testified in impeachment that the State's witness, Juanita, had made the inconsistent statement.

■ It is important to notice that expressly within this court's statement of the exception herein considered (which permits the admission into evidence of prior consistent statements for rehabilitation of the witness) is the express essentiality that the witness has been impeached *by proof* of his statements inconsistent with his present testimony, that is, the essentiality that evidence has been introduced tending to establish statements made by the witness, which statements were inconsistent with his testimony at the trial. If a witness on cross-examination admits he made the inconsistent statement, proof of the making thereof is, of course, supplied by the witness' own testimony, and the witness stands impeached (Piehler v. Kansas City Public Service Co., supra) ; but if the witness denies making the statement, or says he does not remember making it, the cross-examiner, at this point, merely has laid the foundation for impeachment which may be consummated by the introduction of evidence tending to show the witness had actually made the impeaching inconsistent statement.

(In the Piehler and Emma cases the witnesses were impeached by their own admissions that they had made statements inconsistent with their testimony at the respective trials. The evidence of their prior consistent statements was held admissible in rehabilitation. In passing, it is of interest here that in a case where the witness had admitted making statements inconsistent with his testimony at the trial, the St. Louis Court of Appeals held prior consistent statements offered in rehabilitation inadmissible. Williams v. St. Louis Public Service Co., Mo.App., 245 S.W.2d 659. The ruling was based on dictum in the opinion by Cooley, J., in Stewart v. People, 23 Mich. 63, at pages 74-75. See now, Vol. IV, Wigmore on Evidence, supra, at page 198. The Williams case was transferred here, 363 Mo. 625, 253 S.W.2d 97, and in our review it was unnecessary for this court [en Banc] to express an opinion on the question.)

We bear in mind that in our case the witness Burgess testified that he did not remember making the inconsistent statements.

■ In our case, it is readily seen that, on cross-examination, the attention of the witness Burgess was directed to his written statement of May 5, 1956 (a part of which was assertedly inconsistent with his present testimony), but the inconsistent statement of which counsel for plaintiff inquired had not been introduced into evidence (that is, the witness had not been impeached by proof of an inconsistent statement) at the time the defendant's counsel sought to prove the asserted prior consistent statement of March 2, 1954. When asked if he remembered saying "there were no electric signals on the corner at the intersection, and the only signaling device was a flickering light hanging up over the street," the witness answered, "I don't remember making that statement." The witness also detailed the circumstances of his perfunctory examination of the statement of May 5, 1956, at the time he signed it, and of his reluctant and hurried conversation with Filippine. Obviously, when the witness denied recollection of making the statement apparently inconsistent with his testimony, there was no evidence in the record and before the jury tending to show the witness had made any inconsistent statement. Consequently, although it may be

assumed that by cross-examination the predicate or foundation was laid for the introduction of impeaching evidence (the statement of May 5, 1956), the proffer by defendant of the contended rehabilitating evidence (the statement of March 2, 1954) was premature. When a proper foundation has been laid for the introduction of inconsistent statements of a witness in impeachment, it becomes necessary to prove them. Merely calling the witness' attention to his prior contradictory statements does not amount to an attempt to get such statements before the jury. State v. Fleming, supra; 58 Am.Jur., Witnesses, § 781, pp. 430–432. Therefore, it is now said that the proffer by defendant of evidence tending to corroborate the present testimony of the witness Burgess, which proffer was made before impeaching evidence was introduced, was premature and that such evidence, when offered, was not incorrectly excluded by the trial court in this case.

 Here we do not have a case wherein, in cross-examination, counsel uses a written statement, purportedly inconsistent with the present testimony of the witness, in casting the imputation that the witness had made the statement where no such statement exists or there was no intention on the part of cross-examining counsel to introduce the purported statement into evidence. As we have said, in the instant case, plaintiff in rebuttal offered her Exhibit No. 16. But, after such offer by plaintiff, defendant did not renew its offer to prove the witness' former consistent statement of March 2, 1954. The situation of defendant in this case is like that of defendant in State v. Cooper, 71 Mo. 436. Defendant Cooper, who had testified as a witness, offered evidence of his good reputation for truth and veracity. Although, since the Cooper decision, this court has held that proof of mere contradictory statements does not authorize the introduction of evidence of the witness' general reputation for truth and veracity (Orris v. Chicago, R. I. & P. R. Co., 279 Mo. 1, 214 S.W. 124), this court in the Cooper case approved the trial court's exclusion of defendant Cooper's offer for another sound reason. The offer had been made after defendant's denial that he had made certain statements and before the State had introduced any evidence to contradict him. Therefore, defendant Cooper's offer of evidence tending to show his good reputation for truth and veracity was premature, and the evidence was held to have been correctly excluded. And the offer was not renewed or repeated after the State's contradictory or impeaching evidence was introduced.

The judgment should be affirmed, and it is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.