Joyce STRATTON, Respondent,

v.

**CITY OF KANSAS CITY, MISSOURI, a
Municipal Corporation, Appellant.**

No. 47597.

Supreme Court of Missouri,

Division No. 1.

July 11, 1960.

Motion for Rehearing or to Transfer to
Court en Banc Denied Sept. 12, 1960.

Richard H. Koenigsdorf, City Counsellor, Robert A. Meyers, John J. Cosgrove, Asst. City Counsellors, Kansas City, for appellant.

James H. Ottman, David H. Clark, Kansas City, for respondent. Sebree, Shook, Hardy & Ottman, Kansas City, of counsel.

HYDE, Judge.

Action for damages for personal injuries caused by a fall on a sidewalk. Plaintiff had a verdict for $15,000 and defendant has appealed from the judgment entered. Defendant contends that the court erred in refusing to direct a verdict in its favor. Therefore, we will consider the evidence from the viewpoint most favorable to plaintiff.

The evidence concerning her fall and most of the evidence as to the condition of the sidewalk came from plaintiff's own testimony. Plaintiff was employed as a teacher by the Red Shield Nursery School operated by the Salvation Army. One of her duties was to take kindergarten classes from the Nursery School on Thirteenth Street to the Franklin School on Fourteenth Street, a distance of about a block and a half, and later bring them back to the Nursery School. Her fall occurred in the morning of a January day when she was bringing 26 children from the Franklin School to the Nursery School, walking east on the north side of Fourteenth Street. It was snowing and there was 3 to 4 inches of snow on the walk. It was "a loose, wet type of snow" and "it was not packed snow." There were "foot-steps in the snow" but "it wasn't a packed down path." Plaintiff had been going over this sidewalk in her work for two and one-half years. She described the part of the walk east of the alley near the Franklin School, as follows: "That is the part of the walk that is made up of the hexagon shaped blocks and they looked like they had been there for years and had hoofed and buckled, sunken in, some were up and some had bulged up and others had sunken. * * * they were very uneven." Plaintiff said that on the day she fell there were "stuck up places in the sidewalk that did show in this area of the sidewalk," through the snow; and "that was quite a long area of broken sidewalk." Photographs in evidence confirm this description and indicate different elevations between block and pieces of blocks. Plaintiff estimated these blocks

were raised in one place or another from a half inch to an inch and a half. The whole blocks were about 18 inches wide.

Plaintiff was wearing flat heels, loafer type shoes. She said she stopped the children after crossing the alley and told them to be more careful "and to watch me and pick up their feet and put them down carefully as I did so they wouldn't fall and hurt themselves or get wet in the snow." She described her fall as follows: "I turned around and I took a step. When I started to take a second step I was doing it very carefully because I had made an illustration of myself to my children to do likewise. As I made my second step my toe caught an object and I was looking—it was partially covered with snow, it was not completely, the whole walk along there was not completely covered with snow but it was partially covered with snow. * * As I made my second step my toe caught on the corner of one of those hexagon shaped blocks or I think it did, it couldn't have been anything else. That was the only thing there that protruded. * * * I *did not slide*, I didn't slip, I caught my toe on this object that just more or less suspended me and I was trying to catch myself. * * * Q. It was something that remained *perfectly solid*? A. Yes." She said the protruding object, over which she fell, was about the middle of the sidewalk near the set of steps closest to the alley (two sets of steps into buildings are shown in the pictures); and that there were no bricks or rocks on the sidewalk.

■ Defendant contends that plaintiff failed to prove that her fall was caused by an actionable defect, relying mainly on Maxwell v. Kansas City, 227 Mo.App. 234, 52 S.W.2d 487, and Lundahl v. Kansas City, Mo.App., 209 S.W. 564. Defendant says that, while it may reasonably be inferred from plaintiff's testimony that she stumbled against a raised sidewalk block, this is no basis for the further inference that this raise or elevation was an actionable defect. In the Lundahl case (209 S.W. loc.cit. 565)

the difference in the elevation of the blocks of the sidewalk (six feet square) was between two and three inches and the court said this case was along the border line but held issue of negligence should be left to the jury. In the Maxwell case, the court considered the difference in elevation between two concrete slabs of a sidewalk to be one and one-fourth inches, at the point where the plaintiff fell, which was caused by tree roots growing under it. The court said (52 S.W.2d loc. cit. 491): "We have not found a case where the elevation extended so slightly above the surface and for so short a distance, and was the *only defect* relied upon"; and stated it was "unwilling to extend the liability of a municipality to slighter defect than any heretofore declared." However, the court really based its decision against liability on its finding that plaintiff's testimony as to the manner of her fall showed that it could not have been caused by the elevation. We reviewed the Lundahl and Maxwell cases in Taylor v. Kansas City, 342 Mo. 109, 112 S.W.2d 562, 564, and said: "Whether an alleged defect constitutes negligence depends upon the facts of the particular case and ordinarily whether the condition complained of as defective, and as constituting negligence on the part of the city, is such that the sidewalk is not, because thereof, reasonably safe, is a question of fact for the jury, but, as we have noted, if the evidence most favorable to plaintiff shows that the alleged defect was of such a slight and trivial nature that it could not reasonably be anticipated that such a slight defect or variation in the surface of the sidewalk would likely cause injury to travelers, in the exercise of proper care for their own safety, plaintiff does not make a submissible case." See also annotations, 119 A.L.R. 161 and 37 A.L.R.2d 1187; 25 Am.Jur. 774, Sec. 488.

■ However, in this case, we do not have a situation where the only defect relied on was a slight elevation of one whole section of a walk over that adjoining it. Here plaintiff's testimony and the pictures

in evidence show that from the alley for a considerable distance east (beyond the first set of steps) the sidewalk was composed of hexagonal blocks, some broken into several pieces, with some blocks and pieces of blocks bulged up and others sunken, which plaintiff said had elevations between the edges varying from one-half inch to one and one-half inches. A difference of one and one-half inches in elevation between two whole adjoining sections of a sidewalk would be easier to see and avoid than would such differences of elevation in many places in a sidewalk due to bulged and sunken blocks and pieces of blocks throughout, with various elevations between them, making the whole walking surface rough and uneven. Therefore, our view is that whether this defective condition made this sidewalk not reasonably safe and constituted negligence on the part of the city was a question for the jury.

■ Defendant further contends that, even if it be held that the condition of the walk was actionable, nevertheless there was no proof whatever of the height of the elevation against which she struck her foot; that it could have been a half inch or less; and that it is uncertain whether plaintiff stubbed her toe on a raised place or slipped on the snow. Therefore, defendant claims the evidence was not sufficient to show that any actionable defect was the cause of plaintiff's fall and that the cause was left to speculation and conjecture, citing Ray v. City of Poplar Bluff, Mo.App., 102 S.W.2d 814, and Luettecke v. St. Louis, 346 Mo. 168, 140 S.W.2d 45. In both of these cases, the evidence indicated that the plaintiff fell before reaching the obstruction alleged to have been negligently permitted by the City. The applicable principle of nonliablility was thus stated (140 S.W.2d loc. cit. 51): "If the injury may have resulted from one of two causes, for one of which, and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result; and, if the evidence leaves it to conjecture,

the plaintiff must fail in his action." However, in this case, plaintiff's testimony definitely eliminated slipping on the snow and showed that she was tripped by a solid, immovable part of the sidewalk while she was demonstrating to the children how to walk carefully. The pictures do show variations in elevation between many portions of the sidewalk blocks through a considerable part of the middle of the sidewalk, near the steps closest to the alley. It is true, as defendant points out, there is no direct evidence as to height of the block over which plaintiff stumbled. Nevertheless, from plaintiff's testimony as to what happened, and how it happened, and the condition of that part of the walk as shown by the evidence, including the pictures, our view is that the jury reasonably could infer there was at that place a defective condition of the sidewalk with the maximum estimated elevation, due to bulging and sinking of blocks and pieces of blocks, which caused her fall and that defendant was negligent in permitting it to remain in that condition. See Corley v. Kroger Grocery & Baking Co., 355 Mo. 4, 193 S.W.2d 897; Douglas v. Douglas, Mo.Sup., 255 S.W.2d 756; Proctor v. City of Poplar Bluff, Mo.App., 184 S.W. 123; Seigel v. Kroger Grocery & Baking Co., Mo.App., 164 S.W.2d 645; Genova v. Kansas City, Mo.App., 254 S.W. 2d 38. We, therefore, hold that the court properly refused to direct a verdict for defendant.

Defendant also claims error in permitting a statement to be read, which was made by plaintiff on the day of her fall, to the adjustor of the company carrying her employer's Workmen's Compensation insurance. This statement was offered during the direct examination of the insurance adjustor, who testified after plaintiff had testified. In it plaintiff said: "At a broken place or raised place in the sidewalk I stumbled and fell to the right sideways on my right hip." Defendant objected to this as "entirely self serving, hearsay, having no bearing." (Defendant also now says it injected the issue of an undescribed broken

place when plaintiff's theory was that her fall was caused by a raised place.) Plaintiff's counsel said it was "offered for the purpose of rehabilitation and establishing the fact she did stumble and fall in contrast with any statement she did slip on the ice and snow." Plaintiff argues here that this was a prior consistent statement admissible for the purpose of rehabilitation because a medical record showed plaintiff had later stated that she fell on an icy street. Plaintiff cites such cases as Jones v. St. Louis-San Francisco Ry. Co., Mo.Sup., 253 S.W. 737, 740, and Piehler v. Kansas City Public Service Co., 360 Mo. 12, 226 S.W.2d 681, 684. These cases involve prior statements of a witness, not prior statements of a party, and are not applicable for several reasons.

In the first place, prior consistent statements of a witness are not admissible as proof of the facts stated but only "to sustain the credibility of the witness who has been impeached by the proof of contradictory statements." Jones v. St. L. S. F. Ry. Co., supra, 253 S.W. loc. cit. 741; Hammond v. Schuermann Building & Realty Co., 352 Mo. 418, 177 S.W.2d 618; Wigmore on Evidence, 3rd Ed., Secs. 1132 and 1792. Moreover, in the case of a witness, before a prior consistent statement is admissible, a foundation must be laid by asking him if he made an alleged statement (inconsistent with his testimony) and if he denies it the inconsistent statement may be admitted, after which his prior consistent statement is admissible; but to offer it sooner is premature and improper. McElhattan v. St. Louis Public Service Co., Mo.Sup., 309 S.W.2d 591, 596; as to the necessity of such procedure when a party is a witness see 58 Am.Jur. 426, Sec. 777; 98 C.J.S. Witnesses § 600, p. 591; see also Paige v. Missouri Pacific R. Co., Mo. Sup., 323 S.W.2d 753, 757. As we pointed out in the McElhattan case (309 S.W.2d loc. cit. 594) evidence of a prior consistent statement when the witness has not been impeached "would ordinarily be both irrelevant and cumbersome to the trial, and

hearsay; and courts generally reject it." See also Wigmore, Sec. 1124; Williams v. St. Louis Public Service Co., Mo.App., 245 S.W.2d 659, 665.

As to a party, the situation concerning his statements is entirely different: "[A]nything said by the party-opponent may be used against him as an admission, provided it exhibits the quality of inconsistency with the facts now asserted by him in pleadings or in testimony" but "the party's testimonial utterances do not pass the gauntlet of the Hearsay rule when they are offered for him." (Wigmore on Evidence, 3rd Ed., Sec. 1048.) As further pointed out (Sec. 1048) as to a witness "the theory of the Hearsay rule is that an extra-judicial assertion is excluded unless there has been sufficient opportunity to test the grounds of assertion and the credit of the witness, by cross-examination by the party against whom it is offered" but as to a party "the objection of the Hearsay rule falls away, because the very basis of the ruling is lacking, viz. the need and prudence of affording an opportunity of cross examination." See also Owens v. Kansas City, St. J. & C. B. R. Co., 95 Mo. 169, 183, 8 S.W. 350; State ex rel. Taylor v. Anderson, 363 Mo. 884, 254 S.W.2d 609, 615. Furthermore, in this case, plaintiff was never asked by anyone whether she made the statement (that she fell on an icy street) so she had neither affirmed, denied nor explained it. Instead her inconsistent statement was first brought into the case by her own counsel on direct examination of her doctor in a deposition, which was offered in evidence as a part of plaintiff's case after she had testified, before defendant had offered any evidence. Therefore, plaintiff's statement to the Workmen's Compensation insurance adjustor was nothing more than a self-serving statement inadmissible under the res gestae rule (which is not claimed) or any other rule of evidence. Under these circumstances, it certainly was error to admit this self-serving statement of plaintiff for any purpose and especially so for the purpose of "establish-

ing the fact she did stumble and fall" and did not slip on ice or snow.

The next question is whether we can say this was not prejudicial error. Defendant cites Gough v. General Box Co., Mo.Sup., 302 S.W.2d 884, and Wallendorf v. Rensing, Mo.Sup., 329 S.W.2d 779, in which we held the admission of self-serving statements of a party to be reversible error. In the Gough case [302 S.W.2d 887], plaintiff's statement admitted was that "a truck had jackknifed into him." We held this prejudicial saying (302 S.W.2d loc. cit. 891): "Whether defendant's truck jackknifed and crossed over into plaintiff's side of the highway, or whether plaintiff turned his truck to the left into the side of defendant's trailer was the principal fact issue of the case. Upon the determination by the jury of that question depended the result of the lawsuit." In the Wallendorf case, the defendant's statement admitted was that the truck ahead of her car made a left turn right in front of her without giving any signal (329 S.W.2d loc. cit. 783) and we held this was "highly prejudicial." See also Roush v. Alkire Truck Lines, Inc., Mo.Sup., 299 S.W.2d 518, 522. In this case, the principal fact issue was whether plaintiff stumbled over a raised place in the sidewalk or slipped on snow or ice. Defendant's theory was submitted by Instruction 7, requiring finding as follows: "[Y]ou are further instructed that if you find and believe from the evidence that the sidewalk where plaintiff claims to have fallen was in a reasonably safe condition for travel, and if you further find plaintiff fell because of a general condition of snow or ice, then your verdict must be for the defendant." As hereinabove noted, in offering this statement, plaintiff's counsel said its purpose was to establish the fact that plaintiff did not slip on the ice and snow. The statement was not proper, competent evidence for that purpose and we cannot know what its effect on the jury was in the determination of this essential fact issue. Therefore, we must hold it prejudicial.

Since this case must be retried, we will consider defendant's claims of error in Instruction 1, which, omitting the part concerning duty and degree of care, was as follows:

"If, therefore, you find and believe from the evidence that on January 18, 1955, at the time and place plaintiff fell, if so, the public sidewalk at a point approximately in front of 408 West 14th Street, from any cause whatever had become rough and uneven due to the sinking or raising as well as the breaking of the hexagonal blocks of said sidewalk, if so, so that there was a raised place or places of approximately one and one-half inches between one portion of said sidewalk and that portion of said sidewalk immediately adjacent thereto, if so, so that said sidewalk was dangerous and defective and not reasonably safe for the ordinary use of the public in walking thereover, if you so find, and if you find that such dangerous and defective condition of said sidewalk, if so, continuously existed for some time before plaintiff fell, if so, and long enough before plaintiff's fall for defendant Kansas City by the use of ordinary care to have known thereof and by the use of ordinary care to have repaired and remedied same before plaintiff fell, if so, and that defendant Kansas City failed to use ordinary care in the above respects and that thereby and in maintaining said sidewalk in the aforesaid condition, if so, defendant Kansas City was negligent, if so, and if you further find that on January 18, 1955 at approximately 11:30 A.M. the dangerous and defective condition, if any, of said sidewalk was concealed with a deposit of snow, if so, and that plaintiff was walking in an easterly direction along and upon said sidewalk, if so, and was at all times using ordinary care for her own safety, if you so find, and that she was caused to stumble and to fall by reason of her foot striking such dangerous and defective condition, if any, and that she was thereby injured as a direct result of the aforementioned negligence, if so, of

the defendant, then your verdict must be for the plaintiff."

Defendant says there was no evidence to support the findings of an elevation of one and one-half inches causing plaintiff's fall. Defendant also says that submitting "breaking" of the blocks as a cause of her fall was contrary to her theory of recovery and not supported by the evidence; and that submitting other defective conditions, having no relevancy to plaintiff's fall (according to defendant), was prejudicial in cumulative effect. The first contention is ruled by what we have said in passing on defendant's claim that it was entitled to a directed verdict. No doubt "the breaking of the hexagonal blocks" was intended to be submitted as a cause of creating raised places with elevations between blocks or pieces of blocks rather than as the cause of plaintiff's fall but this could be more clearly stated. Stating it "as the breaking of the hexagonal blocks" could be construed as meaning the blocks broke or moved when stepped on which was not claimed. It would be better to omit it and clearly submit difference in elevation as the defective condition which caused plaintiff's fall.

The other findings complained of were as follows: "had become rough and uneven due to the sinking or raising, as well as the breaking, of the hexagonal blocks of said sidewalk, * * *."

"* * * so that said sidewalk was dangerous and defective and not reasonably safe for the ordinary use of the public * * *."

"* * * that such dangerous and defective condition of said walk, if so, continuously existed before the time plaintiff fell * * *."

"* * * for defendant Kansas City to have known thereof (in time) to have repaired and remedied same * * *."

"* * * the dangerous and defective condition, if any, of said sidewalk was concealed with a deposit of snow * * *."

However, we do not consider them improper (except as to what we have said concerning "the breaking" of the blocks) because the first and last were only findings of existing surrounding circumstances shown by the evidence (the finding as to snow tended to show plaintiff was not negligent) and the other three were essential to finding duty and negligence of defendant.

Defendant's remaining contentions concern the extent and permanency of plaintiff's injuries, which must be decided on the evidence on retrial.

The judgment is reversed and the cause remanded.

All concur.

On Motion for Rehearing and in the Alternative for Transfer to Banc

PER CURIAM.

■■ We have not held as plaintiff's counsel states in his suggestions in support of his Motion that a foundation must be laid to impeach a party by a contradictory statement by first confronting him with the contradictory statement. We have held exactly the opposite, namely that "anything said by the party-opponent may be used against him as an admission" without asking him anything about it; but have also held that a party's self-serving utterances are not admissible unless they fall within some exception to the hearsay rule such as res gestae.

The situation we have in this case is not one of rebuttal of a statement of plaintiff, in conflict with her theory of the case, offered by the defendant. Instead plaintiff's own counsel on direct examination asked Dr. Meyer, his own witness (in a deposition): "What history did she give?" (meaning the plaintiff.) The answer he received was: "She stated she fell on an icy street." Plaintiff was never asked whether she made that statement, no explanation of

it was ever offered and there was no claim of surprise. Thus plaintiff wants us to hold that it was proper to put in evidence one statement made by her to rebut the truthfulness of another statement, which her own witness says she made, without any denial or explanation of such statement by her. Plaintiff's counsel says he had to read the whole deposition to get the benefit of Dr. Meyer's testimony at the trial but what he overlooks is that he did not have to ask Dr. Meyer that question when he took his deposition. Therefore we reaffirm our ruling that, under these circumstances, it was error to admit plaintiff's self-serving statement made to the workmen's compensation insurance adjustor.

The motion is overruled.