**Helen M. SEITTER, Respondent,**

v.

**CITY OF ST. JOSEPH, Missouri, Appellant.**

**No. 23575.**

Kansas City Court of Appeals.
Missouri.
June 4, 1962.

Joseph G. Wood, and Mark W. Youngdahl, St. Joseph, for appellant.

Dale, Potter & Flynn, Whitney W. Potter, St. Joseph, for respondent.

CROSS, Judge.

Plaintiff received personal injuries when she stepped into a rut and fell while walking across a street intersection. The defendant city appeals from a judgment entered on a jury verdict awarding plaintiff damages in the sum of $3200.00.

It is suggested in plaintiff's brief that the appeal should be dismissed for defendant's failure to comply with Civil Rule 83.05, V.A.M.R. Plaintiff complains that defendant's brief does not contain a fair and concise statement of facts and lacks specific page references to the appeal transcript as required by the cited rule. In our discretion we decline plaintiff's request to enter a dismissal. The appeal will be determined on its merits.

Defendant contends that the trial court erred in refusing to direct a verdict in its favor because the evidence showed that the "defect" in the city street was of such slight and trivial nature that, as a matter of law, defendant was not guilty of any negligence. In deciding this point we shall consider the evidence from the viewpoint most favorable to plaintiff.

Plaintiff's fall occurred in the middle of the intersection of Seventh Street and Edmond Street, in the business district of St. Joseph, Missouri. That intersection is described by the city's superintendent of streets as "a heavily travelled intersection". Edmond Street runs east and west, and, at the intersection involved, is a one-way thoroughfare travelled by eastbound traffic. Seventh Street is a two-way street running north and south. Travel at the intersection is controlled by light signals directing both vehicular and pedestrian traffic. When the "walk" light is on, pedestrians are permitted to cross the streets and vehicular traffic is stopped in all directions. The intersection is described as a "scramble cross-walk" which pedestrians are permitted to negotiate *diagonally* from all four corners as well as *directly* from corner to corner.

Plaintiff is a married woman, fifty-eight years old, and a lifelong resident of St. Joseph. On the afternoon of February 21, 1961, she and a friend, Mrs. Gladys Whittaker, had gone downtown to do some shopping. After having shopped for about two hours, they walked to the northeast corner of the described intersection, intending to cross it diagonally to the southwest corner where they would take a bus to return home. They waited until the "walk" light appeared and then proceeded to walk across the intersection in the intended direction. They were in the pedestrian crosswalk and were following a white line which had been painted on the street to mark the crosswalk from the northeast to the southwest corner of the intersection. Plaintiff was carrying her purse and a pan in her left arm. She had a sweater, a "little sack" and a sack of doughnuts in her right hand or arm. When plaintiff reached the approximate center of the intersection she stepped into a hole with her left foot, her ankle turned, and she fell forward, face down. The force of the fall was "absorbed" by her right arm. The incident occurred in daylight at about 4:10 P. M. The weather was clear and dry.

The "hole" into which plaintiff stepped is more particularly described in evidence as one of two parallel ruts running the length of the intersection right in the center of Edmond Street. Plaintiff said the two ruts "sort of looked like two lines where old car tracks might have been". The city's street superintendent explained that the two ruts were caused by "the lapping of a machine that laid the pavement". According to plaintiff's evidence, the rut was 4½ inches wide and 1½ inches deep at the place where she stepped into it and fell. The rut was further described as "rough", "uneven", "ragged" and "jagged".

In claiming to be innocent of negligence as a matter of law, defendant argues that the depth of the street defect (1½ inches) was not sufficient to warrant submission of plaintiff's case to the jury, "because there were no other circumstances adding to this depression". We are thus invited to determine the liability or nonliability of the city, as a matter of law, *solely* by applying a linear measure to the depth of the street defect, without taking into account any other attendant factor or condition. We are unwilling to rest our decision on a test of such limited scope—particularly when it is apparent from the record that there were other attending circumstances and conditions materially affecting the issue before us.

The additional factors which have been shown to exist and must be taken into consideration are here noted. The rut had dimensions of significance other than its depth of 1½ inches. It was shown to be 4½ inches wide and extended the length of the intersection. It was rough, uneven, ragged and jagged. The place where plaintiff step-

ped into it and fell was directly in the center of the crosswalk marked for pedestrian travel. The street defect in this case was located in one of the busiest intersections of the city where the attention of pedestrians was necessarily attracted by traffic signal lights, and would likely be diverted by the presence of other pedestrians negotiating the intersection at the same time on the same walk signal—possibly from twelve different directions.

All of the foregoing considerations have significant bearing on the question before us. As stated in 63 C.J.S. Municipal Corporations § 807, pp. 130–136,

"It has been said that there is no hard-and-fast rule as to the character or extent of a defect in a sidewalk or street that is necessary to impose liability on a municipal corporation, but whether a defect is such as to render the municipality negligent in permitting its continuance depends on the amount of travel on the street or walk, the actual location and nature of the defect, and the character of material with which the pavement or walk is constructed. The depth or height of a defect in a sidewalk cannot alone be the test of whether the municipality is negligent in allowing the defect to continue. In each case the way is to be pronounced sufficient or insufficient as it is or is not reasonably safe for the ordinary purposes of travel under the particular circumstances which exist in connection with that particular case, considering the nature of the place and such reasonable limitations as may be put on the use of the way for travel by virtue of other public necessities, convenience, and safety.

\* \* \* \* \* \*

"No definite or mathematical rule can be laid down as to the depth or size of a sidewalk depression necessary to convict a municipality of negligence in permitting its continued existence, and each case must be determined by its surrounding circumstances. So the determination of the question whether a crevice or depression constitutes an actionable defect cannot rest on the depth of the depression in inches only, but consideration must also be given to the amount of travel on the walk, the actual location and nature of the irregularity, and the character of the material of which the pavement or walk is constructed."

Defendant relies principally upon three Missouri cases—Ray v. City of Poplar Bluff, Mo.App., 102 S.W.2d 814; Lundahl v. Kansas City, Mo.App., 209 S.W. 564; and Maxwell v. Kansas City, 227 Mo.App. 234, 52 S.W.2d 487. These cases are not supportive of defendant's present contention.

We view the Ray case as being unfavorable to defendant. The appellate court there clearly held that a cause of action was stated by a petition alleging that plaintiff's fall was caused by a difference in elevation in two parts of a sidewalk amounting to from one inch to an inch and a half. The foregoing is the only unequivocal finding, pertinent to the instant question, contained in the opinion.

In the Lundahl case the court affirmed a judgment for injuries resulting from a fall caused by a difference in elevation of two sidewalk sections amounting to between two and three inches. The court said in its opinion: "The obstruction may be so great or so slight as that it could be declared to be, or not to be, negligence, as a matter of law. That in the present case is along the border line, and we think it should be left to a jury". The foregoing decision is favorable to plaintiff in this case insofar as it holds that a two inch defect is sufficient to present a jury issue of the city's negligence. The decision is unfavorable to plaintiff here in stating that a two (to three) inch rise was "along the border line", because it invited inference by other courts that any street defect of lesser elevation should be held nonactionable as a matter of law. Incidentally, the "border line"

statement was not necessary to a decision of the case. Nonetheless, it stands as a basis for the court's decision in the Maxwell case.

The defect shown in the Maxwell case was a difference in elevation of two slabs of a concrete sidewalk amounting to one and a quarter inches at the point where plaintiff fell. No other defect or condition was proven or relied upon. In reversing a judgment for plaintiff the court there said:

> "We have not found a case where the elevation extended so slightly above the surface and for so short a distance, and was the *only defect* relied upon, as the so-called defect in the case now before us. * * * If the offset in the surface of the street, of 2 or 3 inches, in the Lundahl Case is 'on the border line' between a defect to be left to a jury to say whether it is actionable, and one to be declared nonactionable as a matter of law, then it would seem that one inch less than that, as in the case at bar, is on this, or the nonliable, side of that line. Under all the circumstances, we are unwilling to extend the liability of municipalities to a slighter defect than any heretofore declared, so far as we have been able to find in the adjudicated cases".

Despite the court's statement in the Maxwell opinion that "we are unwilling to extend the liability of municipalities to a slighter defect than any heretofore declared" (two inches) this court can not say that the speaking court actually promulgated a rule to the effect that an obstruction in a sidewalk or street would be considered so trivial as not to be actionable unless its height was at least two inches—or any other given number of inches. The reversal of the Maxwell case was not based on an insufficiency of the sidewalk defect, but was due to the fact that the evidence showed plaintiff's fall was caused by slipping on a small piece of ice—not by reason of the defect. Therefore, the references contained in the Maxwell opinion relative to the depth of a defect necessary for it to be considered actionable are not true judicial determinations to any greater extent than are the "border line" expressions offered gratuitously in the Lundahl case. Nor are we aware of any decision subsequent to Lundahl and Maxwell which has had the effect of establishing an arbitrary mathematical rule to determine whether a street defect is actionable. This fact is apparently recognized by the defendant city. Its brief contains the following admission: "Defendant is aware that the Missouri appellate courts have seemingly chipped away at the doctrine stated in the Lundahl, Maxwell, and Ray cases, supra."

Furthermore, we distinguish the Maxwell case from the instant case by the wide variance in the fact situations respectively shown. The Maxwell case was predicated on a single defect—the 1¼ rise. The evidence there did not show the accompanying presence of any other defect, condition or circumstance contributing to the sole hazard of the slight elevation. In the present case the street defect was directly in the path of pedestrian travel, in the middle of one of the busiest and most traveled intersections of the entire city. It was at a place where foot travel was controlled and complicated by traffic signals, and where pedestrians were subjected to the added distractions of motor traffic and the presence of fellow foot travelers traversing the intersection on the same signal. Additionally, the defect itself—the rut—had dimensions of length and breadth as well as of depth and was shown to be rough, uneven, ragged and jagged, all as we have noted. Other Missouri cases which have also differentiated Maxwell on the facts, essentially as we have done, include Taylor v. Kansas City, 342 Mo. 109, 112 S.W.2d 562; Butler v. City of University City, Mo.App., 167 S.W.2d 442; Young v. Kansas City Public Service Company et al., Mo.App., 255 S.W. 2d 113; Stratton v. City of Kansas City, Missouri, Mo.Sup., 337 S.W.2d 927; and Genova v. Kansas City, Mo.App., 254 S.W. 2d 38.

Plaintiff finds ample support in Missouri decisions for the proposition that a street defect having a depth of one and a half inches may be considered actionable and that the determination of that question is for the jury. In Taylor v. Kansas City, supra, the sidewalk defect was an abrupt and semicircular slope of the sidewalk amounting to one and a half inches in eight inches. The Supreme Court refused to rule that the city was not liable for the defective street condition as a matter of law.

The condition complained of in Stratton v. City of Kansas City, supra, consisted of broken hexagonal blocks in a sidewalk leaving elevations between the edges amounting to between one-half inch and one and one-half inches. The court there held that whether the described defective condition made the sidewalk not reasonably safe and constituted negligence on the part of the city was a question for the jury.

In Young v. Kansas City Public Service Co. et al., supra, plaintiff was injured by stepping into a hole in the street at a street car stop. The hole was *at least* one inch deep and six inches in diameter. The court stated: "Under all the facts and circumstances, and under the holdings in the Taylor and Butler cases, supra, we are forced to the conclusion that the minimum dimensions of the hole, as described by plaintiff's witness Mihlic, (1 inch deep, 6 inches in diameter), would not make the hole so trivial as to relieve the defendants of liability, but, on the contrary, made an issue whether the place was not *reasonably safe*".

In Butler v. City of University City, supra, the defect was a depression in the sidewalk three-fourths of an inch to an inch and a half deep located at a bus stop. We quote the following from the opinion:

"In determining this question, no hard and fast rule can be applied. Each case must stand or fall on its own facts. A jury might reasonably find that defendant was negligent in permitting a one and a half inch hole to remain in a sidewalk at one location and was not negligent in permitting it to exist at another, depending upon the surrounding circumstances.

\* \* \* \* \* \*

" \* \* \* We do not believe that liability in such a case is a matter of inches, and we are reluctant to say to an injured person that he missed going to the jury by one-half inch, when from all the facts and circumstances a jury might reasonably find that the action of the defendant in allowing the hole to exist, whatever its measurements, was not up to the standard of conduct expected of an ordinarily prudent person".

In Lithegner v. City of St. Louis, Mo. App., 125 S.W.2d 925, the court expressed views which we consider pertinent to the question here considered, quoted as follows:

"So far as we are advised, the legal concept of negligence has not been changed from the act or omission of a hypothetical figure which, for the purpose of the law, is referred to as an ordinarily prudent person, to a precise and mathematically certain number of inches and fractions of an inch in a case of this character.

\* \* \* \* \* \*

"If defendant's contention that one and one-quarter inches of a depression in a sidewalk is not actionable negligence should be sustained in this case, there would be nothing to prevent a court from saying that a depression of one and one-half inches, then later one and three-quarters inches, and so on, is not negligence. We do not believe that the question of negligence can be reduced to fractions of an inch in the matter of instructions to the jury in a case of this character without completely destroying the legal concept of negligence as it has been traditionally known to the law".

We rule that the trial court committed no error by overruling defendant's motions

for a directed verdict and submitting the issue of the city's negligence to the jury.

Defendant's second point is that the trial court erred in overruling its motions for a directed verdict because plaintiff was guilty of contributory negligence as a matter of law. Defendant urges that plaintiff was not exercising due care for her own safety because it is shown by the evidence that she was familiar with the intersection; that while crossing the intersection she was looking toward a drug store on the southwest corner (her destination) and not at the pavement; that she had been talking to Mrs. Whittaker; and, that she was carrying articles in both her arms. Defendant says it is clear from the foregoing circumstances that plaintiff was oblivious to her course of travel and was engaged in "stargazing", as proscribed in Ryan v. Kansas City, 232 Mo. 471, 134 S.W. 566.

■ We note first that plaintiff testified she had no knowledge of the presence of the rut in the intersection. Therefore, she had a right to assume that the designated walkway was reasonably safe for her use. See cases cited and digested in 21A Missouri Digest, Municipal Corporations ⬥806 (2). Plaintiff was not chargeable with knowledge of the defect by the mere fact that she was a resident of the city or that she was generally familiar with the intersection. See Roberts v. City of Piedmont, 166 Mo.App. 1, 148 S.W. 119. It follows that plaintiff's duty as a pedestrian without knowledge of the defect was nothing more than to conduct herself as reasonable prudent persons do under the circumstances. She was not required "to search for a possible defect or make of * * * (herself) * * * a sidewalk inspector". Kirk v. Kansas City, Mo.App., 128 S.W.2d 1128. Neither was she obliged to keep her eyes constantly upon the public way ahead. Clancy v. City of Joplin, Mo.App., 181 S.W. 120. Although pedestrians cannot be indifferent to dangers in their pathway, they are not required to keep their eyes fixed upon the sidewalk immediately in

front of them. Little v. Kansas City, 239 Mo.App. 1007, 197 S.W.2d 1005. In Huffman v. City of Hannibal, Mo.App., 287 S.W. 848, l. c. 849, the court said:

"The rule seems to be that, where plaintiff does not know of the obstruction and walks over the sidewalk in the manner that persons ordinarily do, and the obstruction or defect is not such as to be obviously apparent to the ordinary person, then it is a question for the jury as to whether plaintiff was guilty of contributory negligence. It is said in some of the cases that plaintiff, of course, may not be permitted to be stargazing and utterly disregard looking forward in the progress of the journey; but our Supreme Court has also said time and again that a pedestrian need not be a sidewalk inspector. The pedestrian is not required to scrutinize closely the sidewalk, but he may assume that same is reasonably safe for travel".

■ It is our judgment that under all the facts and circumstances shown in evidence, including those suggested by defendant, the issue of plaintiff's contributory negligence was for the jury.

Defendant further assigns error in the ruling of the court admitting in evidence plaintiff's Exhibit "I"—a photograph depicting the intersection as seen from the southwest corner looking to the northeast corner. Defendant's complaint of the exhibit is that it did not show the "alleged defect in question", but instead attempted to show "other defects in the street", thereby misleading and confusing the jury, distracting the jury's attention from the main issue in the case, and prejudicing the jury against defendant. The "other defects in the street" are described by defendant as a "sewer inlet * * * with loose gravel around it" and, as shown in the picture, appear to be at the extreme southwestern point of the paved portion of the intersection where it abuts against the curb.

It is well established that the admissibility of photographic evidence is a matter largely within the discretion of the trial judge and that his ruling will not be disturbed on appeal unless that discretion is abused. See Brock v. Gulf, Mobile and Ohio Railroad Co., Mo.Sup., 270 S.W.2d 827; 20 Am.Jur., Evidence, Section 727, p. 607. The photograph in question was identified as a view of the intersection showing the exact course of plaintiff's intended walk, from the northeast corner where she started, to her intended destination at the southwest curb.

The picture shows the spot where plaintiff fell and also shows the white painted lines extending from the curb at the southwest corner *toward* which she was walking, as well as from the curb at the northeast corner *from* which she walked. The exhibit shows the general conditions surrounding the scene of the accident and accurately represents the intersection. We believe that the above noted subject matter, as portrayed by the photograph, was relevant to the issues and aided the jury in arriving at a decision. We cannot agree that the exhibit was rendered objectionable or that it tended to prejudice the jury against defendant merely because it included the sewer grating at the southwest corner. Plaintiff never arrived at that point in her interrupted crossing of the intersection and it was not her contention that the sewer facility or its surroundings had any relevance to the causation of her fall. We rule that the trial judge did not abuse his discretion and committed no error by admitting the exhibit in evidence.

We finally consider defendant's complaint that there was not substantial evidence to justify the verdict of $3200.00 and that such award is excessive. Our further review of the evidence discloses that after plaintiff fell in the street she was assisted to the curb and taken to her doctor's office. She was suffering severe pain in her right shoulder, ankle and knee. Her right arm, shoulder, right breast and the right side of her body were black and blue. Her right knee was skinned and bleeding. Her left ankle was swollen and bruised. X-ray examination disclosed that she had a comminuted fracture of the right shoulder. The doctor placed her in a complete arm cast, with the elbow in bent position. Plaintiff was taken to a hospital where she remained two days, suffering severe pain, nervousness and mental distress. She wore the cast two weeks. The cast itself caused discomfort and pain and prevented plaintiff from lying down. Because of it the doctor required her to sit up twenty-four hours a day and sleep in a chair. She slept very little, became very nervous and lost eight pounds. She developed a severe rash or hives—"some kind of reaction"—under the cast, all over her body and up into her hair and eyes. That condition lasted for three days. During convalescence plaintiff could not perform her housework or render assistance in her husband's real estate business as she had formerly done, and she was unable to perform her personal habits without assistance. Plaintiff has been continuously under the doctor's treatment since she was hurt. She is still going to him twice a week. On July 17th following her fall she returned to the hospital, and, under anaesthetic, underwent a forcible breaking of adhesions in the injured shoulder to give her better use of her arm. There is a knot on plaintiff's shoulder blade behind the right shoulder. Plaintiff's doctor testified that she had permanent disability known as a frozen shoulder—a condition which has limited the motions of her arm. It was the doctor's opinion that at the time of the trial the injury had resulted in a 25% disability in the use of her arm. Plaintiff had incurred doctor, hospital and medical bills in the amount of $561.46 up to the time of trial.

In view of the foregoing evidence we are unwilling to say that the verdict is excessive.

The judgment is affirmed.

All concur.