Myrtle Louise FAIN, (Plaintiff) Appellant,

v.

MARGO EQUIPMENT COMPANY, Inc., a Corporation, (Defendant) Respondent.

No. 31238.

St. Louis Court of Appeals. Missouri.

March 19, 1963.

James C. Jennings, Maurice S. Karner, St. Louis, for plaintiff-appellant.

Alexander & Robertson, L. A. Robertson, Ernest E. Baker, St. Louis, for defendant-respondent.

RUDDY, Presiding Judge.

Plaintiff appellant herein brought this action against the Margo Equipment Company, Inc., a corporation, seeking damages for personal injuries sustained when she fell into defendant's basement through a cellar hole in a public sidewalk in front of defendant's place of business on Manchester Avenue in the City of St. Louis. The jury returned a verdict for plaintiff for $2,000.00 and, thereafter, defendant's motion for judgment in accordance with its motion for a directed verdict was sustained by the trial court and the jury's verdict was set aside and a judgment was entered in favor of the defendant and against the plaintiff. Plaintiff has appealed from the action of the trial court in setting aside the verdict and judgment of the jury for plaintiff.

Plaintiff contends the trial court erred in sustaining defendant's motion for judgment in accordance with its motion for a directed verdict because the evidence showed that defendant was negligent in failing to se-cure the doors leading to the cellar hole, and further contends that plaintiff was not guilty of contributory negligence as a matter of law.

Defendant contends the trial court did not err in setting aside the verdict and judgment in favor of plaintiff and entering the judgment in favor of the defendant on defendant's motion because plaintiff's evidence showed that she was negligent as a matter of law in a manner directly contributing to cause her injuries. These contentions require a review of the evidence pertinent to a determination of the issues presented by the contentions.

█ In reviewing the issues presented by the contentions, we must keep in mind that the trial court may direct a verdict only when the facts in evidence and the legitimate inferences drawn therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ. Trower v. Missouri-Kansas-Texas Railroad Co., 347 Mo. 900, 1. c. 908, 149 S.W.2d 792, 1. c. 795 and Cline v. City of St. Joseph, Mo. App., 245 S.W.2d 695.

The Margo Equipment Company, Inc., defendant herein, was engaged in a general manufacturing business and maintained its offices and place of business at 7107 Manchester Avenue in the City of St. Louis. Manchester Avenue and the sidewalk adjoining the place of business of the defendant is an open and public street and highway extending in an easterly and westerly direction. Defendant's place of business is on the north side of Manchester Avenue. The first intersecting street east of defendant's place of business is Reichert Avenue and the intersecting street east of Reichert Avenue is McCausland Avenue. The first intersecting street west of Reichert Avenue and west of defendant's place of business is Blendon Avenue. Plaintiff described the distance between Reichert Avenue and Blendon as "A long block." Some distance west of defendant's place of business is a bus loop where plaintiff customarily boarded a bus each morning to transport her to

her place of employment. Between the building housing defendant's place of business and the north curb of Manchester Avenue, defendant had and maintained metal cellar doors over a coal hole or delivery hole (variously described in the testimony by the parties) in the sidewalk. The hole is underneath the sidewalk and leads to the basement under defendant's place of business. We shall hereinafter refer to the hole as the cellar hole. When the cellar hole is closed, it is covered by two metal doors, black in color, that operate on hinges and when the doors are closed they form a part of the sidewalk used by the pedestrians. When it is necessary to open the cellar hole, the doors would swing upward from the surface of the sidewalk and would stand perpendicular to the sidewalk. Each door, when open, extended thirty inches above the sidewalk and four and one-half feet across the sidewalk. Between Reichert Avenue and defendant's place of business, there were two buildings, a residence and a tavern. The cellar hole doors were located twenty to twenty-five feet west of the east side of the defendant's building. An employee of the defendant testified that the doors would only open a limited distance and could not be opened so that they would be flush with the sidewalk, but, that they would lean back in an upright position and that he would place a two-by-four with little cleats nailed on each side so that the doors could not fall or close unless you took out the two-by-four. There was a thirty-five inch space between the doors and the north curbline of Manchester Avenue and a six inch space between the doors and the defendant's building. The depth of the cellar hole was approximately ninety inches.

On the 13th day of August, 1957, the day on which plaintiff fell, about 8 A.M. one of defendant's employees opened the doors to the cellar hole for the purpose of airing the basement. This employee testified that he put the two-by-four across the doors near the outside of the doors, close to the curb.

On August 13, 1957, plaintiff lived at 6902 Bruno Avenue in the City of St. Louis. Bruno Avenue is one block north of Manchester Avenue. On this date, she was employed by the J. J. Newberry Company and was due at her place of employment at 9 A.M. She left her home at the above address at approximately 8 A.M., intending to go to the bus loop on Manchester Avenue, which was approximately five blocks from her home. She proceeded southwardly on McCausland Avenue to Manchester Avenue and then westwardly on Manchester Avenue on the north side of the street to Reichert Avenue. She crossed Reichert Avenue and continued in a westerly direction on the north side of Manchester Avenue when she recalled that she had not taken a thyroid pill which, it seems, she was in the habit of taking each morning. The thyroid pills were contained in a bottle which she had in her purse. She took the bottle containing the pills out of her purse and, as she said, " * * * poured the pill in my hand * * * " and thereafter, she swallowed the pill and was in the act of putting the pill bottle back into her purse when her foot hit something; when she looked down to see what she had hit, she said she was looking " * * * right into the coal chute"; thereafter, she fell into the cellar hole. She lost consciousness as she fell and when she regained consciousness she was sitting up in the bottom of the hole. When she was asked to describe the top of the cellar hole, she answered, "Well, it's a big opening. It's long and it has two doors, and they close together like this (indicating) and they were open, and they come, the biggest part of it, way across the whole sidewalk."

Plaintiff did not see the raised cellar doors before she fell. Her right foot came into contact with the easternmost door and when her foot struck the door " * * * it came down." She did not see a two-by-four on the doors to hold them open and she saw nothing on the doors " * * * that became unhitched." While plaintiff did not know the cellar doors were raised on that

particular morning, she did know that the cellar doors were there and knew she had room to walk around the cellar doors in the space south of the said doors. Plaintiff described the weather as "hazy," although she said it was not raining, and she was carrying an umbrella and a folded uniform in addition to her purse at the time she fell. After she left the east curb of Reichert Avenue, she saw no one ahead of her and said that no one was walking ahead of her. She said, " * * * if you would look ahead that far * * * " you could see to Blendon Avenue from Reichert Avenue; however, she did not notice how far west she could see, contending that "I was watching where I was going." She admitted that there was nothing present to obstruct her view to Blendon Avenue. She said she watched where she was walking when she was in front of the tavern and in front of the residence between the tavern and defendant's place of business, and when she got to the east end of defendant's building she was watching where she was walking. At none of these places, as she was walking westwardly, did she see the open doors. She was asked, "Did you look before you took out your pocketbook or your pill box?" and she answered, "I was looking where I was going, yes."

On another occasion during her testimony, she was asked, "Well, during the time you were walking from the east end of that building up to the time your foot came in contact with that door, my question was did you look to see where you were stepping or what the condition of the sidewalk was?" and she answered, "Well, I could see down, sure, right down at my feet close enough to see where I was walking." She said she had walked along this street many times before and knew that the doors were there. It was somewhere along the east end of defendant's building that she began to take the pill bottle out of her purse at which time she slowed down the pace of her walking. When asked to explain how she happened to walk into the upright doors, she said, "Well, I wasn't expecting anything to be in the middle of the sidewalk." She admitted that as she was walking and looking down toward the sidewalk that her range of vision was fifteen to twenty feet in front of her. Plaintiff had lived in the vicinity of the accident approximately 10 years and had worked for the Newberry Company for almost one year and prior to working for it she worked for Hy's Drive-In for two years. During these three years, she used this same route—namely, walking the north side of Manchester Avenue to the bus loop. During the three years of the above employment, she remembers seeing the doors open only once and this was when she was working for Hy's Drive-In.

One of the witnesses offered by plaintiff testified that he was driving his automobile westwardly on Manchester Avenue and saw plaintiff walking on the north side of the street on the sidewalk when she was about twelve feet from the metal doors. He saw her walk into the doors and hit the east metal door and, thereafter, saw her fall down into the cellar hole. At the time she hit the metal door and fell down into the cellar hole, he was about 100–150 feet away. He said he could see that the doors were open and that there was nothing on the north sidewalk between himself and the doors that prevented him from seeing the doors. He was asked, "Did you have any difficulty seeing from where you were sitting in your automobile those doors as they were raised up prior to the time she hit one of them and fell in?" He answered, "No, I saw her walk right against the door and go on over. * * * " This witness got out of his automobile and went to the assistance of plaintiff. He saw no two-by-four at the scene of her fall. He was asked, "And it was obvious for anybody to see who looked, is that correct?" and he answered, "Yes, sir."

Another witness offered by plaintiff was on a lot at the corner of Blendon Avenue and Manchester Avenue on the north side of the street. He did not see plaintiff fall but arrived on the scene shortly after her

fall at which time he did not see any two-by-four. Looking eastwardly from his position on the lot, he had no difficulty seeing the metal doors and he estimated the distance on Manchester Avenue from the point where he was on the lot to the metal doors as 75 feet.

We see no need to discuss plaintiff's first contention that her evidence showed defendant was negligent in that it failed to exercise ordinary care to secure the doors in an upright position. We will assume that her evidence makes a prima facie case of negligence against defendant. However, we are convinced that plaintiff was contributorily negligent as a matter of law. Precedent establishes settled law in the judicial arm of government and we are confronted with an unusual precedent in this case, described in the vernacular of the highway as a "spotted mule" or "gray horse" case, which is not a usual experience in this court. We say an unusual precedent because the factual situation is practically similar in all pertinent respects. As defendant states, the facts in the instant case bring it squarely within the ruling in the case of Sloan v. American Press, 327 Mo. 470, 37 S.W.2d 884.

In the Sloan case, plaintiff fell into an open elevator shaft located in an areaway in a sidewalk in front of defendant's premises. The opening was about sixty-four or seventy-four inches long and forty or fifty inches wide. When the elevator was not in use, the opening in the sidewalk was covered by a pair of iron doors which operated the same as those in the instant case. When the elevator was in use, the doors were raised and would stand perpendicular to the sidewalk and the doors served as guards or barriers, some twenty to twenty-four inches high, to the opening. Iron-mesh screens were fastened to the raised doors and served as guards for the other sides of the hole. At the time of the accident the doors were open and the doors and the iron-mesh screens were in the upright position described above. In the Sloan case, plaintiff testified that he was walking west on the sidewalk and had stopped to light a cigarette and that thereafter he walked for some distance with his eyes, face and body turned toward a man on the other side of the street whom he thought he recognized. He proceeded forward twelve or twenty-five feet while looking at the man and ran against one of the barriers and fell into the elevator shaft. Plaintiff's evidence in the Sloan case showed that he had no previous knowledge of the opening. The Supreme Court held that plaintiff was contributorily negligent as a matter of law and said that he could have seen the obstruction a long way ahead and that he could have glanced forward from time to time observing his course but that he failed to do so, holding, that it was negligence to fail to observe and avoid an obstruction of such size as the one involved in the case.

After reviewing a number of cases, the Supreme Court said at l. c. 890:

"Without going further, it is evident that all the cases, even the dissenting opinion in the Ryan Case, require a pedestrian to have some concern for his own safety in walking on a public sidewalk though he may be innocent of knowledge that there are defects or obstructions along the way. He does not have to be constantly on the alert for defects not plainly observable, but neither may he go along paying no attention to where he is walking so that he would fail to see and avoid obvious obstructions. He must proceed as a reasonably prudent footman would do, with his eyes open and having regard for his general course."

After examining additional cases, the court went on further to say at l. c. 891:

"We are unable to see anything in any of these decisions which will exculpate the appellant here from the charge of contributory negligence under his own testimony. In some of them the holding is based on the ground that the obstruction was not obvious

or of sufficient magnitude necessarily to challenge the attention of a reasonably observant person. In others the pedestrian was frightened. In the Brown Case the plaintiff, an elderly man, was confronted with an emergency calling for concentration and quick action, when he tried to head off the calf in the alley. In the Powers Case the plaintiff fell into a dark stairway at night when taking the first step, as he was leaving a crowd standing on the sidewalk."

The significant thing the Supreme Court said, which is applicable to the facts in the instant case, appears in a concluding paragraph of its opinion at l. c. 891 and is as follows:

"But none of these circumstances were present in this case. The appellant was proceeding along the sidewalk in broad daylight. The elevator opening, or at least the barriers 3½ feet high, were plain to be seen. He was not frightened or acting in an emergency. He could have glanced forward from time to time observing his course, but he did not. He could have seen the obstruction a long way ahead. His excuse for not doing so is that he lit a cigarette, and thereafter kept his eyes on a man on the other side of the street he thought was Ralph Ray. Thus engaged, he proceeded forward 5 or 10 steps, 12 to 25 feet. Appellant insists in his brief that, when testifying he never did say positively how many feet he went or how many steps he took at this juncture. The record shows he estimated the distance over and over again at 5 to 10 steps or more. But, be that as it may, the fact is clear he walked a substantial distance.

" * * * but he cannot go along altogether inattentive with nothing to occupy him but his own reflections or the fact that he believes he sees a friend across the street, *especially when there is an obvious obstruction just ahead in plain sight."* (Emphasis supplied.)

Looking to the evidence in this case, we find from the record that plaintiff was walking westwardly on the sidewalk on the north side of Manchester Avenue. At the intersection of Reichert and Manchester Avenue, which was east of the raised doors, she could see all the way to Blendon Avenue, which was west of the doors and as she said, it was a long block. It is uncontroverted that the two doors that covered the opening to the cellar hole leading into the basement were open and were raised in a vertical position. The doors extended approximately thirty inches above the sidewalk, which was six to ten inches higher than the doors involved in the Sloan case. The doors extended across the sidewalk 4½ feet. It cannot be doubted that the doors, when raised, constituted plainly visible objects and were of such magnitude and proportion as to be an obvious and glaring obstruction in the path of plaintiff as she proceeded westwardly along the north side of Manchester Avenue. Plaintiff knew the cellar hole was there, although she did not see the raised doors on the day in question. She attempts to excuse her act of walking against one of the doors and falling into the basement by stating that she was engaged in taking a thyroid pill out of a bottle she had in her purse just previous to the time she walked against one of the doors. However, she admits that when she would be looking down toward the sidewalk, which she might be doing when taking the pill bottle out of the purse, her vision encompassed an area ahead of her of approximately fifteen to twenty feet. Even though her attention was engaged with the purse and the pill bottle, she could still see fifteen to twenty feet ahead of her if she was looking forward. She further attempts to excuse her act of walking into the upraised doors by saying she was not expecting anything to be in the middle of the sidewalk and despite her act of walking into the door she said she watched where she was

walking when she passed in front of the tavern and the residence and when she got to the east end of the defendant's place of business. If plaintiff's testimony regarding her conduct and the circumstances prior to her fall are to be believed, and we must believe them for the purpose of this review, her subsequent act of walking into the door and falling into the cellar hole defies explanation.

■■ The Sloan case holds that one has the duty to look and see where she is going as well as the duty to avoid danger when actually discovered. It has been said many times that a person need not be watching at every foot fall for defects but should act like a prudent person who makes reasonable use of his eyes while walking. A person may not carelessly walk along a sidewalk and pay no attention to where he or she is walking and may not fail to see plain and obvious obstructions in their path. Of course, a person walking along a sidewalk is not bound to be on the lookout for hidden and concealed dangers. But as said in the Sloan case, he has a duty to see obvious and glaring obstructions when they are in plain sight if one looks. We think there is more reason to hold the plaintiff contributorily negligent in the instant case than there was in the Sloan case. In the Sloan case, plaintiff sought to excuse his act of walking into the door and falling into the hole by showing that he lit a cigarette as he was walking along the street and that he then looked across the street and observed a man that he thought he knew and watched him proceed along the sidewalk. There is no evidence in this case that plaintiff was frightened or that she was confronted with an emergency which directed her attention elsewhere than in front of her or that there was an absence of light at the time when she walked into the door and fell into the cellar hole. Plaintiff relies on a number of cases that are wholly inapplicable and can be readily distinguished. In Stith v. J. J. Newberry & Co., 336 Mo. 467, 79 S.W.2d 447, the cause of plaintiff's fall was a strip of ice a few inches wide extending across the sidewalk from water dripping off an awning. In Seitter v. City of St. Joseph, Mo.App., 358 S.W.2d 263, plaintiff was injured when she fell into a rut in the street, the rut being 4½ inches wide and 1½ inches deep. In the case of Cline v. City of St. Joseph, Mo.App., 245 S.W.2d 695, plaintiff was injured in a hole twelve inches in diameter and approximately two and one-half to three inches deep. In the case of Butler v. City of University City, Mo.App., 167 S.W.2d 442, a case decided by this court, plaintiff was injured by reason of a defect in a sidewalk caused by a patch in said sidewalk sinking below the general level of the walk and forming a depression of from three-fourths of an inch to an inch and a half. Her fall occurred after dark. In none of these cases, cited by plaintiff, was the plaintiff therein confronted with an obvious and plainly observable obstruction such as confronted plaintiff in the instant case and therein lies the distinction between plaintiff's situation and the situation facing the plaintiffs in the cited cases. In the cited cases the defects causing the falls and injuries were not obvious as a matter of law, whereas in the instant case the cause of plaintiff's fall was obvious and of such magnitude that the law charges her with the duty to see it.

Plaintiff cites another case, Caspermeyer v. Florsheim Shoe Store, Mo.App., 313 S.W.2d 198, decided by this court. In that case plaintiff fell into a sidewalk loading chute. As plaintiff approached the doors covering the loading chute, they were closed. Her attention was attracted in the direction of her son's activities. She stepped on one of the doors that covered the loading chute and stopped momentarily and while thus stopped the other door was raised and when she again resumed her walking she stepped into the hole created when this other cellar door was raised. In that case we held that plaintiff's negligence, if any, was properly submitted to the jury for its determination and we pointed out the distinction between it and the

Sloan case in that the sidewalk door was opened suddenly when plaintiff was on the other door. Therefore, the opening was not plainly observable for a substantial distance. And further, that plaintiff's attention was attracted to her son's activity immediately prior to stepping into the opening. We agree with defendant that the same facts that distinguish the Sloan case from the Caspermeyer case, distinguish the Caspermeyer case from the instant case. There is no need to belabor this opinion with citations of other cases. The Sloan case controls the decision in this case.

We find that the facts in evidence and the legitimate inferences drawn therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ. Therefore, plaintiff was guilty of contributory negligence as a matter of law. The action of the trial court was correct. The judgment is affirmed.

ANDERSON and WOLFE, JJ., concur.