Madge Marie PAGAN and L. C. Pagan, her
husband, Plaintiffs-Appellants,

v.

CITY OF KENNETT, Missouri, a municipal
corporation, Defendant-Respondent.

No. 8661.

Springfield Court of Appeals.

Missouri.

April 2, 1968.

Ford, Ford & Crow, Wendell W. Crow, Kennett, for plaintiffs-appellants.

Dalton, Treasure & Bullard, James C. Bullard, Kennett, for defendant-respondent.

STONE, Judge.

While walking along a public sidewalk in the City of Kennett, Missouri, about 10 A.M. on June 23, 1964, plaintiff Madge Marie Pagan, then 64 years of age, fell by reason of (so she alleged) "an unsafe and dangerous condition . . . in that there was a drop of at least approximately four inches between two levels of the surface" of the sidewalk. In this suit against the City of Kennett as defendant, she sought in Count I of plaintiffs' first amended petition the sum of $10,000 for personal injuries, while in Count II of that petition her husband, plaintiff L. C. Pagan, sought $5,000 for expenses incurred in treatment of his wife's injuries and for loss of her services, society and consortium. The discovery deposition of plaintiff Madge Marie Pagan (hereinafter

referred to as plaintiff) taken by defendant's counsel on September 22, 1966, was filed on September 27, 1966; and on the same date defendant filed its motion for summary judgment under Rule 74.04 on the sole ground that, "based on the pleadings, the evidence and the testimony, the plaintiff is guilty of contributory negligence as a matter of law, and is not entitled to recovery against the defendant." (All references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R.) On December 22, 1966, the court sustained defendant's motion and entered summary judgment for defendant. Upon this appeal by plaintiffs, our inquiry is whether, by evidence raising "no genuine issue as to any material fact" [Rule 74.04(c)], defendant has presented "unassailable proof" that plaintiff was contributorily negligent as a matter of law. Rule 74.04(h).

We note preliminarily certain principles and pronouncements relevant on this review. In ruling a motion for summary judgment, it is the duty of the trial court in the first instance, and it becomes our duty on appeal, to scrutinize the record in the light most favorable to the party against whom the motion was filed and the judgment was rendered, and to accord to such party the benefit of every doubt. Wood v. James B. Nutter & Co., Mo., 416 S. W.2d 635, 636(1); Campbell v. Stout, Mo. App., 408 S.W.2d 585, 588(3); Gasen's Drug Stores, Inc. v. Jones Enterprises, Inc., Mo. App., 388 S.W.2d 495, 500(4). A summary judgment may be rendered where, but only where, the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue of a material fact and that the movant is entitled to judgment as a matter of law [E. O. Dorsch Elec. Co. v. Knickerbocker Const. Co., Mo., 417 S.W.2d 936, 939; Stoffel v. Mayfair-Lennox Hotels, Inc., Mo.App., 387 S.W.2d 188, 190(2)]; "'[a] genuine issue of fact exists for the purpose of avoiding a summary judgment whenever there is the slightest doubt as

to the facts'" [Maddock v. Lewis, Mo., 386 S.W.2d 406, 409, certiorari denied 381 U.S. 929, 85 S.Ct. 1569, 14 L.Ed.2d 688; Elliott v. Harris, Mo. (banc), 423 S.W.2d 831, 835]; and the burden rests upon the movant, in this instance upon defendant, to show by "unassailable proof" [Rule 74.04(h)] that there is no genuine issue of fact [Nelson v. Browning, Mo., 391 S.W.2d 873, 877(1); Clampett, Summary Judgments in Missouri, 22 J.Mo.Bar 14, 17 (1966)] and that movant is entitled to judgment as a matter of law. Norman v. Willis, Mo.App., 402 S.W.2d 46, 47(1). See Cure v. City of Jefferson, Mo., 380 S.W.2d 305, 310(2).

Our appellate courts have repeatedly characterized a summary judgment as an extreme and drastic remedy and have warned that great care should be exercised in utilizing the procedure [e. g., Cooper v. Finke, Mo., 376 S.W.2d 225, 229(3); Anderson v. Steurer, Mo., 391 S.W.2d 839, 842(2); Maddock v. Lewis, supra, 386 S.W.2d at 408; E. O. Dorsch Elec. Co. v. Plaza Const. Co., Mo., 413 S.W.2d 167, 169(1); E. O. Dorsch Elec. Co. v. Knickerbocker Const. Co., supra, 417 S.W.2d at 938(1); Elliott v. Harris, supra, 423 S.W.2d at 835(6)]; and, in an oft-cited landmark case, our Supreme Court has pointed out that "'[s]ummary judgment will not usually be as feasible in negligence cases, where the standard of the reasonable man must be applied to conflicting testimony, as it is in other kinds of litigation.' In negligence cases the procedure is ordinarily used to attack some essential feature of plaintiff's case such as agency rather than the failure of one of the parties to use due care." Cooper v. Finke, supra, 376 S.W.2d at 229. See 3 Barron and Holtzoff, Federal Practice and Procedure (Rules Edition), § 1232.1, p. 106.

Heedful of the foregoing, we proceed to a review of plaintiff's depositional testimony, upon which defendant solely relies to supply "unassailable proof" that plaintiff was contributorily negligent as a matter of law. Plaintiff, a resident of the City of Kennett, had been shopping at several downtown stores on the day of accident and, when she fell, was on the way to her parked automobile. Alone at the time, she was walking south, still in the business district, "more or less in the center" of the concrete sidewalk on the east side of Kennett Street, a north-south thoroughfare. The point of accident was near the *south* edge of the mouth of an east-west alley which ran between a variety store and a paint shop on the east side of Kennett Street. Plaintiff's testimony indicates that the concrete sidewalk ran across the mouth of the alley, and in their respective factual statements opposing counsel agree that the accident occurred "on the public sidewalk." The record discloses nothing concerning the weather on the day of accident, the width of the sidewalk or of the alley, the grade of either, or nearby pedestrian or vehicular traffic at the time of accident; and no photograph of the area under discussion is before us.

In one portion of her deposition, plaintiff testified that, at the *north* edge of the alley, there was "a little, but very little" difference in the sidewalk level; that "the alley" (apparently meaning the sidewalk just south of the north edge of the alley) was *"higher"*—"how much higher . . . I [plaintiff] wouldn't know, it wasn't very high"; but that "it was enough that you had to watch where you stepped." (All emphasis herein is ours.) At another point in plaintiff's examination, defendant's counsel inquired "when you started to step *from the sidewalk down into the alley,* did you look down at the alley . . . *isn't there a little step-down or is there a step from the sidewalk down into the alley,"* to which the witness responded "there's a crack there, it isn't any more since they fixed it, but there was a crack there, had been a long time . . . ." Continuing, counsel asked "was it *raised up* in any way" and was told *"no."* On this testimony, we confess our inability to form any definite image of the sidewalk level or levels at the *north* edge of the

alley. In any event, plaintiff safely *entered* upon that segment of the sidewalk across the mouth of the alley (hereinafter sometimes called the alley segment).

Plaintiff fell as she was *leaving* the alley segment, i. e., at the *south* edge of it. In framing his questions, defendant's counsel frequently referred to "the crack" in the concrete at the south edge of the alley segment, but the condition at that point, to which plaintiff attributed her fall, actually was (so she said) a *difference in elevation* which was a *step-down* from the alley segment to the sidewalk immediately south thereof. From her observation of this step-down after she fell, plaintiff estimated its height by spreading her thumb and one of her fingers and reckoning that spread as "more than four inches." The south end of the alley segment "was raised" and was somewhat higher than the north end of that segment. To the question "was it a gradual slant up," plaintiff surmised "I suppose it was maybe, I don't know" but then made it clear that, in any event, she was not aware of any "slant up" as she walked south over the alley segment.

With respect to whether she had looked where she was walking, plaintiff stated generally that "I always look where I walk" and then specifically that, before her accident, she had looked at the particular portion of the alley segment where she fell. In the course of his extended examination of plaintiff, defendant's counsel repeatedly pressed the witness to precisely fix that point (from which she had so looked) with reference to the step-down at the south edge of the alley segment, but in this counsel met with indifferent success as indicated by divers replies scattered through the deposition, e. g., (a) "I don't know, I couldn't say," (b) "I was on it [the step-down], practically," (c) "I'm sure I was in [the alley segment]," (d) "I told you, I was in the alley [segment]," (e) "that's right" to the question "you don't know if it was when you were crossing the cracks at the *north* edge of the alley or one step

from it [the step-down] or what, is that right," and (f) "I was in the alley [segment], so it would be a step or two" from the step-down.

Wherever she may have been in the alley segment when she *first* looked at the south edge of it, that area then had "looked even." Her explanation of that was: "Because [of] the direction I was going it wasn't easy to see, because the walk was all the same color, and it was just broke straight up there, it wasn't easy to see. Had I been going the other way it would have been easy to see, but I was going the wrong way to see it." She had a distinct recollection of looking at the south edge of the alley segment a *second* time when she was "in the process of stepping on it"—"just as I stepped on it" and then "first realized it was uneven." But it was too late then to check her step and avoid the heavy fall which resulted when she set down her right foot with the "medium height" heel of that shoe on the raised south edge of the alley segment but with the front part of that shoe over the edge and thus unsupported. We observe in passing that plaintiff supplied to defendant's counsel the names and places of employment of two men said to have witnessed her fall. [6]

Plaintiff had walked along that sidewalk for several years, usually two or three times each week. However, because she had been attending her husband at the hospital for some five or six weeks prior to her accident on June 23, 1964, she had made little use of the sidewalk in question during that period and her last trip over it prior to the accident had been "something like a week or ten days" previously, "somewhere before" June 15. Plaintiff conceded that, after her accident, she had heard that the south end of the alley segment had been "raised up in previous years." However, she insisted that "I didn't see it and didn't know about it" and that there previously had been no difference in elevation at the south edge of the alley segment. "It was a little rough,

that was all . . . just some roughness . . . all along that alley [segment] . . . it looked like it had been patched before." To the final incredulous "question" on this subject, "but at no time had you seen this raised portion of the alley [segment]," plaintiff recorded the confident and unequivocal rejoinder, "it wasn't there."

■ A municipality is not an insurer of the safety of persons traveling upon its public sidewalks but its duty is to maintain those sidewalks in a "reasonably safe" condition, i. e., in such condition "that they can be used by a person in the exercise of ordinary care and 'whilst they are not absolutely safe, yet the pedestrian can use them with safety to himself, if he uses ordinary and usual care for his own safety.'" Guy v. Kansas City, Mo., 257 S.W.2d 665, 667; Hart v. City of Butler, Mo., 393 S.W.2d 568, 577(10). See Ryan v. Kansas City, 232 Mo. 471, 482–483, 134 S.W. 566, 569; Taylor v. Kansas City, 342 Mo. 109, 114, 112 S.W.2d 562, 564 (1, 2). Of course, plaintiff had a duty to make reasonable use of her eyesight and to observe obvious defects or obstructions in plain view. Sloan v. American Press, 327 Mo. 470, 481–484, 37 S.W.2d 884, 888–890(2); Fain v. Margo Equipment Co., Mo. App., 366 S.W.2d 14, 18–20(2–4). But since she was (so she said) without prior knowledge of the difference in elevation, she had a right to assume that the sidewalk was reasonably safe for her use [Gray v. City of Hannibal, Mo., 29 S.W.2d 710, 713(8); Clader v. City of Neosho, Mo.App., 198 S.W.2d 523, 528(2); Butler v. City of University City, Mo.App., 167 S.W.2d 442, 446(6); Huffman v. City of Hannibal, Mo.App., 287 S.W. 848, 849], was not required to rivet her sight upon it to discover possible defects [Newdiger v. Kansas City, 342 Mo. 252, 268, 114 S.W.2d 1047, 1056; Ryan v. Kansas City, supra, 232 Mo. at 483, 134 S.W. at 569; Merritt v. Kansas City, Mo.App., 46 S.W. 2d 275, 280], and had no obligation to assume the role and discharge the functions of a sidewalk inspector. Sloan v. American Press, supra, 327 Mo. at 483, 37 S.W.2d at 889; Ryan v. Kansas City, supra, 232 Mo. at 487, 134 S.W. at 570; Caley v. Kansas City, 226 Mo.App. 934, 943, 48 S.W.2d 25, 29. In short, plaintiff's duty as a pedestrian without knowledge of the defect was simply to conduct herself as a reasonably prudent person would have done under the circumstances. Glenn v. City of Springfield, Mo., 254 S.W.2d 632, 634(1); Seitter v. City of St. Joseph, Mo.App., 358 S.W.2d 263, 269(4); Kirk v. Kansas City, Mo.App., 128 S.W.2d 1128, 1133(7).

■ In considering whether the conduct of plaintiff at and immediately prior to her fall was that of a reasonably prudent person, the surrounding circumstances must be taken into account. Glenn v. City of Springfield, supra, 254 S.W.2d at 634; Seitter v. City of St. Joseph, supra, 358 S.W.2d at 265; Cline v. City of St. Joseph, Mo.App., 245 S.W.2d 695, 699(5); Wendegatz v. Kansas City Gas Co., Mo.App., 217 S.W.2d 269, 272(6). As we have noted, plaintiff emphasized that, walking toward the south, "because the walk was all the same color, and it was just broke straight up there, it wasn't easy to see"—circumstances somewhat analogous to those regarded as significant in several instances where the condition or defect, to which the fall was attributed, was of the same color or appearance as the surrounding pavement and blended into it. Hart v. City of Butler, supra, 393 S.W.2d at 573, 575; Hanke v. City of St. Louis, Mo., 272 S.W. 933, 937; Merritt v. Kansas City, supra, 46 S.W.2d at 279; Caley v. Kansas City, supra, 226 Mo.App. at 943, 48 S.W.2d at 30.

■ Since no two cases are presented in the same factual image, whether a plaintiff has been contributorily negligent as a matter of law must, in each instance, be ruled upon the particular facts and circumstances there shown [Jett v. City of Paris, Mo.App., 326 S.W.2d 365, 367(1);

Goldman v. City of Columbia, Mo.App., 211 S.W.2d 541, 543(1); Scanlan v. Kansas City, 223 Mo.App. 1203, 1208, 19 S.W.2d 522, 524]; and it is just as true in cases arising out of pedestrian accidents on sidewalks [Cline v. City of St. Joseph, supra, 245 S.W.2d at 698–699(2); Clader v. City of Neosho, supra, 198 S.W.2d at 528(4); Goldman v. City of Columbia, supra, 211 S.W.2d at 543(3)] as it is in other categories of tort actions [Walker v. Massey, Mo.App., 417 S.W.2d 14, 25(15); Jones v. Fritz, Mo.App., 353 S.W.2d 393, 399(11), and cases cited in note 7], that a plaintiff may not be branded with the guilt of contributory negligence as a matter of law unless the facts in evidence and the inferences fairly deducible therefrom run so strongly against plaintiff as to leave no room for reasonable minds to differ.

■ Having examined, with all of the foregoing in mind, not only the cases cited by counsel but also numerous others, we are unable to agree with defendant that the depositional testimony of plaintiff before the trial court constituted "unassailable proof" that she was contributorily negligent as a matter of law. Although all are dis-

tinguishable factually, the cases cited marginally afford, we think, abundant support for our holding.[1]

Defendant cites only one case involving a summary judgment, namely, Ecker v. Big Bend Bank, Mo.App., 407 S.W.2d 45, where the plaintiff customer fell when she stepped on a curved asphalt mound or wheel block in the defendant bank's parking lot. Since "the basis for imposing liability is the invitor's superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know" [407 S.W.2d at 47(3)], a summary judgment for defendant was affirmed because *"the plaintiff's own evidence [established] beyond doubt that she saw the wheel block on which she stepped, as well as the general condition of the parking lots"* and "[w]hatever danger existed was obvious to the plaintiff who had as much knowledge as the defendant." 407 S.W.2d at 47(5). Instant plaintiff's depositional testimony affords no such support for the summary judgment under review. The other cases cited by defendant's counsel are no more persuasive.[2]

1. See particularly Hart v. City of Butler, Mo., 393 S.W.2d 568(7), where on a "bright spring afternoon" plaintiff tripped on a 4″ iron pipe extending horizontally over the sidewalk for a linear distance of about 2′; Hanke v. City of St. Louis, Mo., 272 S.W. 933, 937(6), where plaintiff fell in a triangular depression 2″ to 3″ lower than the contiguous sidewalk intersection; Seitter v. City of St. Joseph, Mo.App., 358 S.W.2d 263(5), where plaintiff fell in a rut 4½″ wide and 1½″ deep in a diagonal crosswalk. Consult also Glenn v. City of Springfield, Mo., 254 S.W.2d 632(2); Smyth v. City of St. Joseph, Mo.App., 297 S.W.2d 578, 582(7); Cline v. City of St. Joseph, Mo.App., 245 S.W.2d 695, 699, 700(9); Goldman v. City of Columbia, Mo.App., 211 S.W.2d 541, 543(4); Kirk v. Kansas City, Mo. App., 128 S.W.2d 1128(5); Bohn v. City of Maplewood, Mo.App., 124 S.W.2d 649 (2); Neagle v. City of Edina, Mo.App., 53 S.W.2d 1077; Caley v. Kansas City, 226 Mo.App. 934, 48 S.W.2d 25(7); Merritt v. Kansas City, Mo.App., 46 S.W.2d 275(6); Scanlan v. Kansas City, 223 Mo.

App. 1203, 19 S.W.2d 522, 524(1); Huffman v. City of Hannibal, Mo.App., 287 S.W. 848(2).

2. In Jett v. City of Paris, Mo.App., 326 S.W.2d 365, plaintiff was contributorily negligent as a matter of law when on a sunny day she observed size and condition of 2″ step-up in sidewalk but nevertheless fell on it; in Waldmann v. Skrainka Const. Co., 289 Mo. 622, 233 S.W. 242, plaintiff was contributorily negligent as a matter of law when she fell in attempting to step out of a 10″ alley excavation which she had crossed safely only a few hours previously; in Wienshienk v. Phillips Petroleum Co., Mo.App., 259 S.W.2d 414, the basic holding was that plaintiff's contributory negligence was for the jury; and, in Maxwell v. Kansas City, 227 Mo. App. 234, 52 S.W.2d 487, the judgment for plaintiff was reversed because a 1¼″ elevation in the sidewalk was not an actionable defect, especially where plaintiff's evidence showed that such "offset" did not cause her to fall.

The summary judgment for defendant is set aside and for naught held, and the cause is remanded to the circuit court for further proceedings not inconsistent herewith.

HOGAN, P. J., and TITUS, J., concur.